**In re MIDDLE PLANTATION OF WILLIAMSBURG, INC., Debtor.**

Civ. A. No. 83–209–NN.

United States District Court, E.D. Virginia, Newport News Division.

Jan. 12, 1984.

Gary A. Goldstein, Baltimore, Md., W. Alan Maust, Hampton, Va., for Hab Baker, III.

Richard W. Hudgins, Newport News, Va., for Middle Plantation.

David H. Adams, Norfolk, Va., George M. Cheever, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for appellees.

## MEMORANDUM OPINION

KELLAM, District Judge.

The issue on this appeal is whether the action of the Bankruptcy Court in confirming the Modified Chapter 11 Plan submitted by Long Hill Properties Joint Venture (Long Hill) in the reorganization proceedings commenced by Middle Plantation of Williamsburg, Inc. (Middle Plantation) under Chapter 11 of the Bankruptcy Act should be affirmed. This appeal was taken by Middle Plantation and Hab Baker, III, (Baker). Baker is President of Middle Plantation, its chief executive, operations and financial officer, and its principal stockholder. Baker has also appealed from the Bankruptcy Court's action in disallowing an alleged claim against the estate and an order denying reconsideration, but those issues are not now before this Court, except as is hereinafter set forth.

### I.

Middle Plantation was the owner of some 1500 acres of land in James City County, Virginia, near Williamsburg, which it undertook to subdivide and develop. The property was the principal asset of Middle Plantation. Baker owned about seventy percent of the capital stock of Middle Plantation; one Leon Perlin, an officer and director, owned twenty-five percent, and one John Warley owned the remaining five percent of the capital stock. Baker filed timely proofs of claims on behalf of himself, his wife and a closely-held company named Anderson Lorde Realty, Inc., in the sum of $107,180.00 [1].

Perlin became interested in Middle Plantation in the summer of 1977, when he agreed to loan Middle Plantation $350,000.00 for the purchase of said property. Perlin also asserts he loaned or advanced other sums to Middle Plantation. He has filed claim asserting a balance due him of $822,000.00.

Prior to instituting the Chapter 11 proceedings, Perlin entered into an agreement on or about December 17, 1981, with Realtec, Inc., a South Carolina corporation, (Realtec) to establish a joint venture named

---

[1]. Baker is listed in the debtor's schedule of assets and liabilities as having an unsecured claim for sums loaned the company approximating $1,450,000.00. No timely proof of this claim was filed, and the Court denied this claim. This issue is on appeal but not before the Court at this time.

Long Hill Properties Joint Venture (Long Hill). Realtec has engaged in development of residential properties in North and South Carolina and specialized in acquisition of distressed properties. Long Hill was created for the purpose of acquiring the purchase money note and first lien deed of trust issued by Middle Plantation in December 1977, and it anticipated acquiring the property by foreclosure under the first deed of trust. Thereafter, it would proceed with the development of Middle Plantation. In December 1981, Long Hill acquired, by purchase, the said purchase money deed of trust and note, with the balance owing thereunder of some $1,200,000.00, for $400,000.00. Thereafter, foreclosure proceedings were instituted and the filing of this Chapter 11 proceedings followed. After filing of the Chapter 11 proceedings, action was instituted by Middle Plantation against Realtec, Perlin and others, seeking to have the Court declare that Long Hill held the aforesaid purchase money deed of trust note as Trustee for Middle Plantation, and for other relief; and that a payment of $400,000.00 would discharge said balance due on the purchase money deed of trust.

On or about June 1983, after notice and a hearing, upon motion of the United States Trustee, and others, the Bankruptcy Court authorized the appointment of a Trustee for Middle Plantation pursuant to 11 U.S.C. § 1104 and 11 U.S.C. § 151104.

Old Court Joint Venture, Inc. (Old Court), is not a party to these proceedings. However, it undertook to purchase the property in question. It presented a contract to the Trustee's counsel sometime in September 1983, calling for payment to the debtor estate, in cash, of some $4,000,-000.00. A hearing was scheduled by the Bankruptcy Court, after due notice, on whether the offer should be approved. On September 20, 1983, the date of the hearing, the Trustee was handed a new contract reducing the purchase price to $1,950,-000.00, with $1,400,000.00 of that sum going to the Long Hill Plan proponents in exchange for all of their rights under the Plan and settlement of all of their claims. The Plan was objected to by the Trustee

and therefore, the Bankruptcy Court found there was no settlement for him to approve.

The Trustee filed a motion to dismiss this appeal, asserting that the appeal filed by Middle Plantation and Baker, is really the appeal of Old Court; that inasmuch as Old Court is not a creditor or a party, it has no standing to appeal, but is using Middle Plantation and Baker to further its interest. The Trustee's motion and brief filed in support thereof asserts that the lead counsel in this appeal claims he is representing Middle Plantation and Baker, but he actually represents parties diametrically opposed to the interest of Middle Plantation and Baker; that Baker, who is acting in a fiduciary capacity as president of Middle Plantation, has entered into an agreement with Old Courts for future employment and other benefits, which conflicts with his fiduciary duty to Middle Plantation and others.

## II.

It appears from the schedules filed in the Reorganization Proceedings, from the pleadings and evidence, that the affairs of Middle Plantation were in disarray and jeopardy. The activities for development and marketing of the property under development had about ceased. Some of the records of Middle Plantation could not be found. Suits were pending against Middle Plantation, the purchase money deed of trust was in default, and another creditor holding a deed of trust on some of the property was threatening foreclosure. Since the filing of the Chapter 11 proceedings, operation of the property has ceased.

As set out above, actions are pending challenging whether Long Hill is entitled to enforce the purchase money deed of trust of some $1,200,000.00 for the unpaid balance of that lien, or whether Long Hill, which purchased that note for $400,000.00, is to be limited to collecting the sum paid for the note. In that action, other relief, and damages for some $10,000,000.00 are being sought. The issue of damages has

been referred to this Court because a jury trial was requested. A hearing has been held in the Bankruptcy Court on the question of whether the purchase money deed of trust will require the payment of the sum of $1,200,000.00, plus interest, or whether Long Hill may only collect $400,000.00, plus interest. A decision has not been made on that question and the district court has postponed trial of the damages question pending ruling on this appeal.

Middle Plantation did not file a plan for reorganization within the 120 day period allowed to it by 11 U.S.C. § 1121(b). Thereafter, on September 8, 1982, Long Hill filed a Plan for Rehabilitation of the Middle Plantation Property, and a Disclosure Statement. An Amended Disclosure Statement and Plan was filed September 21, 1982. Hearings were held on the feasibility of the plan, the objections raised to it, and whether approval was proper. On October 5, 1983, the Bankruptcy Court confirmed the Plan filed by Long Hill, as amended, and filed its findings of fact and conclusions of law. Among things not set out above, the Bankruptcy Court found:

1. Contingent on the confirmation of Long Hill's modified plan, Perlin and Realtec agreed for the release of Perlin of his interest in Long Hill.

2. Long Hill, as a holder of a purchase money note secured by a deed of trust on Middle Plantation's property, is a creditor of Middle Plantation and a party in interest qualified to file a plan.

3. Long Hill's modified Chapter 11 Plan has been accepted in writing by creditors and equity security holders whose acceptance is required by law.

4. The provisions of Chapter 11 of the Bankruptcy Code have been complied with, the plan has been proposed in good faith and not by any means forbidden by law.

5. Each holder of a claim or interest has accepted the Plan or will receive and retain under the Plan property of value, as of the effective date of the Plan; that is, not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7.

6. Each class of claims has accepted the Plan or is not impaired under the Plan.

7. The Plan does not discriminate unfairly and is fair and equitable to each class of claim or interest under the Plan.

8. To the extent applicable, all payments made or promised by the debtor or a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court.

9. The identity, qualification and application of the persons who will comprise the senior management of Realtec as successor to the Debtor as the developer of the Middle Plantation property, after confirmation of the Plan, have been fully disclosed, and their selection is equitable, consistent with the interest of the creditors and equity security holder and public policy.

10. The identity and compensation of any insider that will be retained or employed by Debtor or Realtec as successor to the Debtor as developer of Middle Plantation property has been fully disclosed.

11. Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or a successor under the Plan except as proposed in the Plan.

12. Realtec has the necessary financial and human resources, experience and expertise to develop the property as a successful residential and recreational community.

In affirming the Plan, the Court reserved jurisdiction of the case for the purposes set forth in 11 U.S.C. § 1127(b) and to determine the allowance or disallowance of claims and interest, to fix allowances and compensation and other administrative expenses, supervise and resolve controversies in the distributions under the Plan, enforce the terms of the Plan and the obligations of

the various parties, and for such other matters as may aid consummation of the Plan.

In brief, the Plan provides that Long Hill will furnish cash monies to pay all administrative expenses and allowed claims, except its own claim under the purchase money deed of trust. Virginia National Bank and Scholz Homes have agreed to deferred payment arrangements of their claims. All other unsecured claims will be paid in full on the effective date of the Plan. Virginia Federal Savings & Loan Association (Virginia Federal), the Debtor's only secured creditor other than Long Hill's claim under the purchase money deed of trust, will be satisfied by curing all existing default payments under the loan agreement between Virginia Federal and Debtor, the reinstatement of the original maturity of said loan and the payment of all future installments as they become due[2].

On the effective date of the Plan, Long Hill will pay the Trustee $100,000.00 cash and deliver to him three promisory notes for $100,000.00, each due on June 30, 1988, 1989 and 1990 respectively, with interest. Long Hill and other defendants in Middle Plantation litigation will place in escrow all cash proceeds from sale of residential units in Georgetown Apartments, a condominium development in Hampton, Virginia. After payment of carrying costs and selling expenses, the net proceeds will be distributed to the Trustee to be used to pay administrative expenses allocated in the Middle Plantation litigation and the balance to Middle Plantation stockholders. All claims asserted in the Middle Plantation litigation will be dismissed with prejudice. Pursuant to Section 5.02 of the Plan, all distributions to stockholders shall be paid to Baker if he consents to the dismissal of certain additional claims he has asserted in his name against other stockholders and other parties. Baker did not elect this option. Long Hill's claim will be satisfied by its retention of its deed of trust lien on Middle Plantation properties, as well as all other rights under the deed of trust and note. At Long Hill's sole option, the property may be transferred to Long Hill on the effective date of the Plan. Long Hill agrees to use its best efforts for development of the property.

There was evidence that the liquidation value of the property was $2.1 million, and that Long Hill's investment in connection with the Plan, considering litigation expenses, amounts paid by Realtec to purchase Perlin's interest in the Joint Venture, will probably exceed $3.4 million. Realtec has sufficient financial resources to fund the Plan. The present adjacent property owners—those who had previously purchased lots or other property from Middle Plantation—support the Plan. As previous purchasers of lots in the subdivision, they are anxious to see the development go forward.

At the commencement of the action, Montague and Long, attorneys, filed the Chapter 11 proceedings on behalf of Middle Plantation. They also filed civil actions on behalf of Middle Plantation and Baker. Later in the proceedings, Montague and Long advised Baker and Middle Plantation that it appeared a conflict of interest might be developing, and they thought it best that they be relieved as counsel of record for Baker and Middle Plantation. It appeared that Baker and Middle Plantation agreed, and upon motion of Montague and Long, they were permitted to withdraw as such counsel, and Baker and Middle Plantation obtained other representation.

Thereafter, a trustee was appointed and Montague and Long were designated as the Trustee's counsel. No objection was raised to their employment as counsel for the Trustee, nor was any question of the propriety of such counsel raised in the Bankruptcy Court. The question was first raised upon appeal of the order confirming the Plan for reorganization.

2. Virginia Federal voted against the Plan and opposed confirmation, asserting its claim was impaired. The Bankruptcy Court found otherwise. Virginia Federal has not appeal this ruling.

### III.

The appeal of the Bankruptcy Court's order of confirmation of the Plan for reorganization submitted by Long Hill raised numerous questions, many of them for the first time. In general, Middle Plantation and Baker ground their objection to confirmation of the Long Hill Plan in the assertion that:

1. Montague and Long's serving as counsel for the Trustee, after having previously appeared in this action on behalf of Middle Plantation and Baker, created a conflict of interest so that the order of confirmation should be set aside.

2. The Court erred in making a finding of good faith on the part of Long Hill in submitting the Modified Chapter 11 Plan.

3. The Court erred in ruling that the claims of Baker of some $1.4 million dollars was not timely filed and therefore, not entitled to vote said claim on the issue of adoption or rejection of the Plan.

4. The Court erred in affirming the Plan in light of the fact the Amended Disclosure Statement and Modified Plan failed to reveal a material difference between the original Disclosure Statement and Plan.

5. The Court erred in confirming the Plan because it unfairly discriminated against creditors having similar claims.

### A.

First, appellants contend this court should reverse the bankruptcy Court's confirmation of the Plan in question because Montague and Long, as counsel for Middle Plantation and Baker in filing the Chapter 11 proceedings, were after election of a Trustee, named as counsel to the Trustee. Early in the Chapter 11 proceedings, Montague and Long feared a conflict might or was developing between the interest of Middle Plantation and Baker, and Baker had different ideas of how the proceedings should be conducted. Montague and Long had conferred with Baker on the issue of a

proposed settlement of the litigation and though making a recommendation to him, suggested he might wish to obtain an opinion from another counsel. A potential problem also existed as to whether a conflict might arise between the interest of Baker and the interest of Middle Plantation[3]. It appears that Baker agreed and obtained other counsel for himself and Middle Plantation.

Thereafter, on motion of the United States' Trustee and others, a Trustee was appointed for the bankrupt. Subsequently, Montague and Long were appointed as counsel to the Trustee.

It appears that the objection now raised to Montague and Long serving as counsel to the Trustee grew out of the fact that in a proposed settlement or adjustment of the issues in the Chapter 11 proceedings, that the Trustee would not agree, and that his counsel advised him they did not think the proposal in the best interest of the Bankrupt Estate or creditors. Baker and Middle Plantation were pushing for the adjustment, and when settlement did not come about, they became displeased with Montague and Long.

Appellee's point out that no place in the record does it appear that Middle Plantation, Baker, or any other interested party ever raised the issue of any potential conflict of interest in Montague and Long being selected as counsel for the Trustee; that the issue was never raised before the Bankruptcy Court, although there was ample opportunity to do so; and that the issue now raised for the first time on appeal, comes too late.

The rule seems clear, not only in the Fourth Circuit, but nationally, that in "the absence of exceptional circumstances, questions not raised and properly preserved in the trial forum will not be noticed on appeal. *Malbon v. Pennsylvania Millers Mutual Insurance Company*, 636 F.2d 936, 941 (4th Cir.1980); *United States v.*

---

**3.** Baker was President of Middle Plantation and its largest stockholder. He also had a personal

claim in the bankruptcy proceedings.

*One 1971 Mercedes Benz, Etc.*, 542 F.2d 912, 915, (4th Cir.1976);" *Skippy, Inc. v. CPC International, Inc.*, 674 F.2d 209, 215 (4th Cir.1982), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280. Later in *Wilkinson v. United States*, 677 F.2d 998, 1002 (4th Cir.1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167, the Court said:

In the first place, such an argument was not advanced by the plaintiff either before the district judge or before us during oral argument or in his brief. We, consequently, should be disinclined to pay attention to the argument. *Dees v. W.M. Webb*, 590 F.2d 144, 146 (5th Cir.1979). ("... Webb may not raise this issue the first time on appeal"); *United States v. One Mercedes-Benz*, 542 F.2d 912, 915 (4th Cir.1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal in the absence of exceptional circumstances."); *Preferred Risk Mutual Ins. Co. v. Thomas*, 372 F.2d 227, 232 (4th Cir.1967) ("In argument before this court, counsel for Preferred undertook to raise an additional point of error which was not raised below nor was it mentioned in argument in Preferred's brief. We do not consider it.")

See also *United States v. Barge Shamrock*, 635 F.2d 1108, (4th Cir.1980), *cert. denied*, sub nomine, *Shell Oil Co. v. United States*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107; *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890 (1st Cir.1979); *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672 (3d Cir.1980); *United States v. Richards*, 646 F.2d 962 (5th Cir.1981). "This general rule applies in appeals from bankruptcy proceedings as well." *In Re Southland Supply, Inc., Bankrupt*, 657 F.2d 1076, 1079 (9th Cir.1981); *Matter of Colorado Corp.* 531 F.2d 463, 467 (10th Cir.1976). *In the Matter of Jerome G. Beery, Beery v. Turner*, 680 F.2d 705, 712, (10th Cir.1982), the Court held that where the trial court "did not rule on the (this) matter ... appealed," the "claim of error is not before us." *See also In the Matter of Ben No-*vack, *Novack v. Gardner*, 639 F.2d 1274, 1276 (5th Cir.1981).

Though it is clear that no objection was raised at the time Montague and Long were named as counsel for the Trustee, nor to such counsel serving in the Bankruptcy Court, and that such an issue is not properly before that Court, the Court need not dispose of this issue on that basis.

Even if we assume that Montague and Long should not have been named as counsel for the Trustee—and there is no basis for so assuming—that would not be sufficient reason to disapprove an otherwise good and proper plan. Not only did Middle Plantation and Baker fail to raise any objection to the selection, they, nor any other party, have pointed to anything, whether in the record or not, that suggests any impropriety in such counsel representation of the Trustee.

While the Court is completely satisfied there was nothing improper in the naming of such counsel and in such counsel serving, the record is clear that counsel advised the Court of the potential problems of their continuing to represent Baker and Middle Plantation, and asked to be relieved. This issue is not only without merit, but should not affect a proper and reasonable Plan submitted to the Court. Complaints of any impropriety in conduct of counsel to the Trustee can be dealt with at time of counsel's request for allowance of attorney's fees.

■ The counsel who represented Old Court in its effort to acquire Middle Plantation property, is of counsel appearing for Middle Plantation in this appeal. The displeasure with Montague and Long, as counsel for the Trustee, grew out of the fact such counsel recommended against the Trustee entering into the proposed agreement to permit Old Court to acquire the Middle Plantation property for $1,950,-000.00. The action of counsel for the Trustee in connection with that offer, under the facts of the case, could not be suggested to be anything but proper. Old Court delivered a contract to the Trustee to purchase the Middle Plantation property for $4,000,-

000.00. A hearing was scheduled to consider the offer. On the day of the hearing, without any explanation or reason therefor, counsel for Old Court submitted to the Trustee and Trustee's counsel, a new contract for the purchase reducing the price from $4,000,000.00 to $1,950,000.00 with $1,400,000.00 of that sum going to the Long Hill Plan proponents in exchange for all of their rights under the Plan and settlement of all of their claims. No explanation was offered for the change in the offer.

### B.

■ Next, appellants challenge whether Long Hill is a party in interest and eligible to file a plan for the Debtor under 11 U.S.C. § 1121(c). Turning to the record, it fails to show that such an objection to confirmation of the Plan was raised at the confirmation hearing. The Court need not reach the issue of whether it must be raised at the confirmation hearing. The Bankruptcy Court made an express finding on this issue as is set out in the Findings of Fact, Conclusions of Law and Order confirming the Plan (confirmation order) in paragraph numbered 2, set out above; namely, that Long Hill as the holder of a promissory note of Debtor, secured by a deed of trust on Middle Plantation property, "is a creditor of the Debtor, and a party in interest qualified to file a plan in this case." In paragraph numbered 5, the Bankruptcy Court found that the Plan "has been proposed in good faith and not by any means forbidden by law." One can not dispute that Long Hill was a creditor and proper party to file a plan.

In the same vein, appellants complain of the Disclosure Statements filed in this case. The Bankruptcy Court, following a hearing, approved the statements and dealt with them in the confirmation order. Earlier, the Bankruptcy Court had overruled appellants' objections to the Disclosure Statements, and found them to be proper. Later, in March 1983, some several months after approval of the Long Hill's Disclosure Statement, Realtec and Perlin agreed that Realtec would acquire Perlin's interest in Long Hill in the event Long Hill's Plan was confirmed. The Bankruptcy Court was fully and promptly advised of this agreement. Under the terms of the agreement, Perlin was to receive $1,250,000.00, payable $250,-000.00 at the time of confirmation of the Plan, a like sum in six to nine months thereafter, without interest, like sums two years and five years, respectively, after confirmation, with interest, and a like sum as a final payment contingent on the project achieving a net worth of two million dollars at the end of ten years. This last payment was to bear interest beginning at the end of the sixth year after confirmation, contingent on the project achieving profits of a minimum of $250,000.00 per year. Perlin also agreed to waive or assign to Realtec all of his claims against and interest in the Debtor.

■ The agreement and its terms were fully disclosed and discussed at the confirmation hearing. Though appellants were fully advised of the provisions of the disclosure statements and the terms of the agreement, they now complain that the terms of the sale by Perlin of his interest in the Joint Venture should have been circulated to all creditors generally as an Amended Disclosure Statement. We may approach this issue by determining how it would affect the creditors generally. Except for the claims of two creditors who agreed to deferred payment arrangements prior to filing of the Plan by Long Hill, all allowed unsecured claims will be paid in full on the effective date of the Plan. All such claims are deemed to be unimpaired under the Plan. 11 U.S.C. § 1126(b) provides that a class that is not impaired under a plan is deemed to have accepted the plan "and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required." Holders of impaired claims who have been induced to vote in favor of a plan are the only ones who may raise the issue of the adequacy of the Disclosure Statements. Those persons who could raise any issue as to the adequacy of the disclosure were on full notice. Though appellants

seek to complain that Perlin will not be active in the development of Middle Plantation, the record shows Realtec is financially able and has had sufficient experience in such operations. Perlin had not previously played an active role in Middle Plantation's development, and there was no reason to expect him to do so under the Plan. Actually, he would seem to be as interested in the success of the undertaking after sale of his interest as before, for the success of the development affects his payments. The sale by Perlin of his interest in the Joint Venture does not involve the disposition of properties of the bankrupt nor does it affect the Plan. But, the effect, if any, on the Plan by Perlin's sale of his interest was a factual matter determined by the Bankruptcy Court.

The Bankruptcy Court heard evidence and arguments on the issues raised, and made findings. These findings are supported by the evidence, and where they are questions of fact, the findings must be clearly erroneous before the Court may reject them. Rules of Bankruptcy, Rule 810. *See also* Rule 752. Attention is directed to the confirmation order for the specific findings made by the Bankruptcy Court.

### C.

■ Next, appellants assert that the Plan provides disparate treatment of similar claims or interest and improperly classifies similar claims. Pursuant to 11 U.S.C. § 1123(a)(4), a Plan shall—

(4) Provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

Appellants attempt to assert that the purchase by Realtec of Perlin's interest in the Joint Venture between Perlin and Realtec known as Long Hill, and Perlin's claims against Debtor, and Perlin's and Realtec's agreement to purchase Warley's stock ownership interest in Middle Plantation results in the claims and interests of Perlin and Warley receiving different treatment.

Such agreements among Realtec, Perlin and Warley are not a part of the "Plan." The requirements of 11 U.S.C. § 1123 concern a Plan, not other agreements. The section begins with the language—"A plan shall" (underscoring added). The plan must provide the equal treatment. Appellant's contentions are without merit or support. The agreements between Realtec, Perlin and Warley in no way affect the Plan or its operation. They merely provide for particular claims or interest to be transferred to another party.

Appellants also assert that the deferred payment arrangements worked out between Long Hill and Virginia National Bank and Scholz Homes, two unsecured creditors, results in discriminatory treatment of similar claims. As set out above, Section 1123(a)(4) specifically provides that the holder of a particular claim or interest may agree to a less favorable treatment. The Plan is simple. It provides that all allowed claims will be paid in full, and the stockholders will share in the balance remaining in Trustee's hands after payment of the administrative expenses. Any difference in treatment between the two above-named parties and other unsecured creditors who are being paid in full, was agreed to by the two named parties.

### D.

Appellants complain that the Bankruptcy Court erred when it approved a "Plan" before it determined the validity and amount of a claim or claims submitted by Baker, as well as the administrative expenses. Further, it says that the Bankruptcy Court failed to determine the amount due by Middle Plantation to Baker, and the amount of the Perlin claim. Appellants say in their brief that the Court could not and did not meet the requirements of 11 U.S.C. § 1129; that the Court did not have any facts before it to make a finding that the Plan complied with the aforesaid statute, or was filed in good faith. But appellants fail to point out or suggest what provision of Section 1129 was not complied with. Appellants further fail to call the

Court's attention to any statutory provision, rule or decision which requires the Court to determine the validity of any claim or the amount of administrative expenses before approving a Plan. Reason dictates such should not be the case. Within reason, the sooner a Plan can be approved and put into operation, the better off the creditors, stockholders and all concerned will be. The assets and good will of the business will be better protected. To require that the validity of all claims which have been filed must be settled before a Plan may be approved is merely to delay. "To request delay when immediate reorganization is practicable is to disregard the rights of creditors, as well as senior stockholders, ... and to continue to subject them to the risk of loss." *Central States Electronic Corp. v. Austrian*, 183 F.2d 879, 882 (4th Cir.1950). Creditors and others concerned are entitled to a reasonably prompt disposition of their claims. Since all approved claims are to be paid in full as soon as confirmation of the Plan is had, delaying confirmation would only delay approved claims from being paid.

It appears that appellants did request the Bankruptcy Court to determine the validity and amount of the claim of Baker and Perlin, but not administrative expenses. Appellants say that the Plan is defective because the administrative expenses must be borne by one class of creditors.

Some of the contentions raised here are apparently from a misunderstanding of the terms of the Plan. A reading of the Plan discloses that the administrative expenses and contingent fees will be borne by one class of creditors. Under the Plan all allowed claims, except the claims of Long Hill will be paid in full, which means that Long Hill is the only creditor who will bear the administrative expenses. The Plan is proposed and designed in good faith and with the expectation that the funds passing into the hands of the Trustee will be more than sufficient to cover such fees and costs. It is correct that payment of these fees and costs will reduce the amount to be later distributed to stockholders. But, no Plan has been submitted which will do as

much. Too, it appears that liquidation would not treat creditors and stockholders as well. The proper sums to be allowed for administrative expenses in this case is within the sound judgment of the Bankruptcy Court, which retains jurisdiction. When claims for such fees and costs are filed, stockholders and other interested persons may be heard.

E.

Appellants assert that the Bankruptcy Court erred in not permitting Baker to vote his claim of some $1.4 million against confirmation. The question of whether the full claim is valid or not is not before the Court in this appeal. The only issue is whether Baker should have been permitted to vote such claim.

It seems this issue may be moot. The claim is one for whatever amount is ultimately found to be due, that will fall into a Class 7 claim. Under the Plan all such approved claims are to be paid in full on the date of the Plan. Since whatever amount is found to be due is to be paid in full, it is unimpaired under Section 1124(3)(A) and deemed to have accepted the Plan. Voting the claim against the Plan would therefore have been meaningless.

The alleged claim of Baker was described in the Schedule as "unliquidated" and "subject to audit." No proof of claim of that claim was ever filed, as is required by statute.

Pursuant to Rules of Bankruptcy 10–401, and 3001, any creditor whose claim is listed as disputed, contingent or unliquidated as to amount, shall file a proof of claim within the time prescribed by subdivision (e)(3) of said Rule and the creditor who does not so file shall not be treated as a creditor for the purpose of voting. Subsection (e)(3) of 3001, like Rule 10–401(b)(1), gives the Court a right to fix a specific date after notice within which claims must be filed. There is no question that a specific date was fixed for the filing of claims and

that Baker's claim was not filed within that fixed time.[4]

The Court is not here dealing with whether Baker should now be permitted to file his said claim. Under the Rule, not having filed his claim, he was not entitled to vote. Whether Baker should be permitted to now file a proper claim, or whether any claim is allowable, or the amount of such a claim is not decided on this appeal. That is an issue for another day.

Again, the Bankruptcy Court made a finding the Plan was proper and in accordance with the requirements of the statute; that it was for the best interest of all concerned and should be confirmed. The Trustee likewise urges confirmation. No good and sufficient reason or basis have been presented or put forward by appellants to justify this Court in rejecting the Plan confirmed by the Bankruptcy Court. As the Fourth Circuit said it is the *Austrian* case, *supra*, after a Plan "has been approved by the Bankruptcy (District) Court, it is not the proper function of this Court to consider whether other Plans which have been rejected might not have as much or more merit." 183 F.2d at page 883. They "are relevant only to the extent that they may throw light upon the reasonableness of the Plan which the Bankruptcy (District) Court has approved." *Id.*

Here, the appellants do not urge or request the Court to accept a different Plan, but merely to reject the one confirmed by the Bankruptcy Court.

Finding the appeal without merit, the action of the Bankruptcy Court in confirming the Long Hill Plan is AFFIRMED.

---

**4.** Baker asserts that he had done the equivalent when the civil action against Perlin and others was instituted. That is, that there and in the bankruptcy proceeding, he asserted his claim. But all interested parties and creditors were not parties to the civil action and would not have notice of Baker's alleged claim asserted there.