In the Matter of Larry Duane
SNYDER, Debtor.

Bankruptcy No. 84–10973.
Civ. No. F 85–444.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 30, 1986.

Grant F. Shipley, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for debtor/appellant.

Jack Roebel, Fort Wayne, Ind., Trustee.

Ward W. Miller, Bloom & Bloom, Fort Wayne, Ind., for creditor/appellee Bank of Geneva.

Daniel J. Skekloff, Peebles, Rogers, Hamilton & Skekloff, Fort Wayne, Ind., for creditor/appellee Sherry Sue Snyder.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on an appeal of a decision of the United States Bankruptcy Court approving a disclosure statement filed by creditor/appellee Bank of Geneva ("Bank"). The debtor/appellant ("Snyder") objected to the disclosure statement, claiming that it did not adequately inform certain creditors. The bankruptcy court indicated its approval of the disclosure statement on April 25, 1985, and denied Snyder's motion to reconsider on September 16, 1985. Snyder then filed his notice of appeal. A hearing on this appeal was held before this court on January 27, 1986. For the following reasons, the bankruptcy court's order approving the disclosure statement will be affirmed.

This appeal arises out of a Chapter 11 proceeding that is still pending in the bankruptcy court. Snyder was a dairy farmer who owned certain farmland with his wife as tenants by the entirety. In October, 1984, Snyder filed a voluntary petition under Chapter 11. The Bank, a secured creditor with interests in the realty, crops

grown on the farmland, and farm machinery, filed a plan of liquidation with the bankruptcy court on February 22, 1985. As a necessary prerequisite for confirmation of the plan, the Bank filed a disclosure statement pursuant to 11 U.S.C. § 1125. Snyder filed a refusal to consent and objections to the disclosure statement on February 27, 1985. A hearing was held on the adequacy of the disclosure statement on March 21, 1985, and the bankruptcy court issued an order indicating its approval of the disclosure statement on April 25, 1985, but giving creditors sixty days to file alternative proposals. The bankruptcy court reaffirmed its ruling when it denied Snyder's motion to reconsider on September 16, 1985. On August 8, 1985, the bankruptcy court ordered that ballots to vote on acceptance of the Bank's plan of liquidation be distributed, and several ballots were returned. The only valid votes to reject the plan came from Snyder and the law firm representing him.

■ The determination of the adequacy of a disclosure statement under 11 U.S.C. § 1125 is a matter for the bankruptcy court's discretion on a case by case basis. *In re Brandon Mill Farms, Ltd.*, 37 B.R. 190, 192 (Bkrtcy.N.D.Ga.1984); *In re A.C. Williams Co.*, 25 B.R. 173 (Bkrtcy.N.D. Ohio 1982). Thus, this court's review of the bankruptcy court's order on the Bank's disclosure statement must be subject to an abuse of discretion standard. However, two issues of justiciability have been raised. The court will consider these justiciability issues first, and then consider the merits of Snyder's appeal.

## I. JUSTICIABILITY

Two issues concerning the jurisdiction of this court to hear this appeal have been raised. The Bank has argued that this court lacks jurisdiction to hear this appeal because of the non-finality of the bankruptcy court's order. In addition, the court has discovered an issue of standing. The court considers each of these issues in turn.

### A. *Appealability of the Bankruptcy Court's Order*

The Bank argues that the order approving the disclosure statement is not a "final" order. 28 U.S.C. § 158(a) grants the district courts jurisdiction to hear appeals from "final" judgments, orders and decrees of bankruptcy judges. Under the statutory scheme for the proposal and approval of involuntary liquidation plans in Chapter 11 proceedings, a party in interest must first file a disclosure statement (11 U.S.C. § 1125), which must be approved after notice and a hearing by the bankruptcy court. Once the statement is approved, all creditors of the estate are given a chance to accept or reject the plan (11 U.S.C. § 1126). The court must then hold a confirmation hearing (11 U.S.C. § 1128), and then the court may confirm the plan (11 U.S.C. § 1129). The Bank argues that because the disclosure statement comes early on in this process, approval of the statement cannot be a final order because the disclosure statement is simply the first in a series of conditions precedent that must occur before a plan can be confirmed. The most logical time for an appeal would therefore be when the plan was confirmed, and the rights of all parties finalized.

There is a certain logical appeal to the Bank's position. However, the Bankruptcy Code appears to foreclose this argument. The Code does not directly address the issue of whether approval of a disclosure statement is, in and of itself, an appealable order. There appears to be no case law on the issue. One provision of § 1125 does discuss appeal of such an approval. Section 1125(d) provides:

Whether a disclosure statement required under subsection (b) of this section contains adequate information is not governed by any otherwise applicable non-bankruptcy law, rule, or regulation, but an agency or official whose duty it is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information. *Such an agency or official may not appeal from, or*

*otherwise seek review of, an order approving a disclosure statement.* (Emphasis supplied.)

The House Judiciary Committee Report on the Bankruptcy Act states that under this section "the agencies and officials are not granted the right to appeal from an adverse determination in any capacity. They may join in an appeal by a true party in interest, however." H.R.Rep. No. 595, 95th Cong., 2d Sess. 409, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6365. *See also* H.R.Rept. No. 595 at 229, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6188.

The negative implication from this language seems to indicate that parties in interest can appeal an approval of a disclosure statement; if no one could so appeal, it makes little sense to specially point out that an agency or agency official cannot appeal.

■ A possible alternative interpretation of this language is that it is intended to forever bar appeals by agencies or officials. This interpretation would be consistent with the Bank's position—parties in interest could appeal after confirmation of the plan, but agencies and officials could not. Under this view the language of § 1125(d) would not appear to be superfluous. However, that statutory language specifically speaks of appeal and "otherwise seeking review of" the adequacy of the disclosure statement. The fact that the section should differentiate between appeal and collateral review suggests that there is something more than merely seeking review of the disclosure statement via an appeal of the plan's confirmation. Thus, the only consistent conclusion to be drawn from the implications of § 1125(d) is that an order approving a disclosure statement is appealable by a party in interest. Therefore, the bank's jurisdictional argument must fail.

## B. *Standing*

A second justiciability issue was raised by the court at oral arguments: the standing of Snyder to bring this appeal. The essence of this appeal is that the disclosure statement failed to provide adequate information to the various classes of creditors so as to allow them to judge the acceptability of the plan. Snyder has not argued that *he* was not adequately informed. This raises an issue of whether Snyder can appeal the order approving the disclosure statement on the basis of harms allegedly done to others.

Two courts have discussed who may object to the adequacy of disclosure statements. In *In re Adana Mortgage Bankers, Inc.,* 14 B.R. 29 (Bkrtcy.N.D.Ga.1981), the court stated:

> Class IV creditors have standing to object to the Disclosure Statement only as to their Class and may not object to the adequacy of the Disclosure Statement as it may affect another class of creditors who have received a notice and who have filed no objection or made any appearance.

*Id.* at 30. In *In re Middle Plantation of Williamsburg, Inc.,* 47 B.R. 884 (E.D.Va. 1984), the court stated that "[h]olders of impaired claims who have been induced to vote in favor of a plan are the only ones who may raise the issue of the adequacy of the Disclosure Statements." Snyder, although a "creditor" of the estate in the sense that he would receive a distribution should there be anything left over after all other creditors were paid, does not fall into either one of these definitions for creditors who may assert the alleged inadequacies of the disclosure statement which are advanced here on appeal.

There is a compelling logic behind this view of standing to object to the disclosure statement. The bankruptcy process, by its very nature, requires all interested parties to practice self-preservation. If a creditor does not press his claim, then all other creditors and the estate benefit from the larger pool of assets available to meet other claims. The onus is therefore on the creditors to assure that the disclosure statement is satisfactory to them, as they will be the only ones hurt by a statement's inadequacy as to them. Other classes of creditors should therefore have no concern

over the adequacy of a statement that does not apply to them.

Traditional principles of standing also support the view that a class can complain about a disclosure statement only as it affects that class. The question of standing is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis in original). A plaintiff is required to show that he has suffered an "injury in fact," and the injury must be "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *J.N.S., Inc. v. State of Indiana,* 712 F.2d 303, 305 (7th Cir.1983).

Here Snyder has not alleged any particular injury to himself (except perhaps his claim that disparaging comments were made about him, a claim not advanced at oral argument). Rather, he advocates reversal of the order approving the disclosure statement on the grounds that certain classes of creditors were misled by the disclosure statement. Those are claims to be raised by those creditors, not Snyder. Despite Snyder's persistent objections to the adequacy of the disclosure statement, no creditor has sought to object, to join this appeal seeking a reversal of the order approving the statement, or to change its vote on the Bank's proposed plan of liquidation.

Snyder has claimed that if the order approving the statement was reversed, then the confirmation process would have to start again, giving him time to convince the trustee to quit the case and allow Snyder to become a debtor-in-possession. That would allow Snyder to attempt to reorganize under Chapter 11 instead of being subject to liquidation under the Bank's plan. However, whatever injury might be caused by the lost possibility of reorganization is simply too speculative here—there is no evidence that the trustee would quit the case (the Bank suggests that the trustee would not).

The court therefore finds that Snyder has no standing to appeal the order approving the disclosure statement on the grounds that the statement inadequately informs classes of creditors of which Snyder is not a part. This appeal should be dismissed on this ground alone. However, out of an abundance of caution, the court will consider the merits of Snyder's appeal.

## II. ADEQUACY OF THE DISCLOSURE STATEMENT

The bankruptcy court's April 25, 1985 order rejected Snyder's objections about the disclosure statement, and its August 8, 1985 order specifically found that the disclosure statement contained adequate information. Snyder appeals the order reaffirming the April 25, 1985 order concerning Snyder's objections to the disclosure statement.

Section 1125(b) requires that the disclosure statement contain "adequate information," which is defined in § 1125(a)(1) as

information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about possible or proposed plans.

The purpose behind disclosure statements is

to inform the uninformed parties in interest (the typical "hypothetical investor") in a formal and uniform way concerning the condition of the debtor ... [and] to furnish to the electorate to the confirmation process sufficient financial and operating information to enable each participant to make an "informed judgment" whether to approve or reject the proposed plan.

*Matter of Northwest Recreational Activities, Inc.,* 8 B.R. 10, 11 (Bkrtcy.N.D.Ga. 1980). Thus, the question posed by this appeal is whether the information fur-

nished in the disclosure statement contained sufficient information to allow "informed judgments" by the creditors.

Snyder raises two alleged deficiencies in the disclosure statement: (1) a failure to adequately describe pending litigation against the estate or Snyder, which creates an inference that creditors other than the Bank will receive a distribution under the liquidation plan; and (2) disparaging comments made about Snyder in the statement. The court considers each of these claims in turn.

## A. *Pending Litigation*

Snyder argues that three court proceedings are not adequately described in the disclosure statement. The first concerns the Bank's own motion in the bankruptcy court to have the entireties' property be declared not in the bankruptcy estate because the cotenant (Snyder's wife) had not also filed bankruptcy. The second related to the pending divorce proceedings in state court between Snyder and his wife. The last relates to a motion by the Bank in the bankruptcy court to have the farming operation considered a partnership among Snyder, his wife and his son. The effect of this failure to describe adequately is that (1) creditors might think that some equity in the entireties' property would be distributed, and that (2) some creditors might misclassify themselves because they did not know of the motion concerning the partnership status of the farming operation.

The court turns first to the general claim that creditors might think that they would get some distribution from equity in the entireties' property. Snyder claims that the statement reveals $30,000 in equity. The court disagrees. Paragraph 2 of the statement states the legal conclusion that the real estate is not part of the bankruptcy estate because it is entireties property. It goes on to point out that once the divorce proceeding distributes the property, Snyder's share will come into the estate. Paragraph 3 then provides:

> Snyder figures the fee simple of this real estate is worth $178,500.00. The real estate is subject to a first mortgage in

favor of the Farmers Home Administration in the approximate amount of $20,-000.00, and a second mortgage in favor of the Bank of Geneva, the allowable amount of which is $128,983.25. Additionally, the CCC has fixture liens on two of the storage bins at the location. Any equity in the property at present, above the value of liens and mortgages, inures to the benefit of the marital unity holding title and, under state law, to unsecured creditors holding joint obligations of both spouses (namely, the Bank of Geneva).

Anyone reading paragraphs 2 and 3 in tandem would see that the $30,000 difference between the mortgages and Snyder's estimate of value would not all come into the estate. Paragraph 2 makes clear that only *Snyder's share* of the property would eventually come into the estate. Further, the language quoted above specifically states that the equity, *if any*, would inure to the marital unit and thus to joint creditors. The Bank specifically identifies itself as *the* joint creditor. Thus, paragraph 3 states very plainly that the equity will not go to anyone other than the Bank. It is hard to see how that language can be interpreted as promising a distribution to creditors.

Snyder argues that there are other joint creditors who might read this and think they were going to get some distribution. They would be completely correct in so thinking—provided they were joint creditors of the marital unit only. That is exactly what the last sentence of paragraph 3 states. The Bank adds a parenthetical that it believes it is the only joint creditor, but that would not deceive a creditor into voting for the plan; if anything, it is alerting creditors that the Bank thinks it will be the only one to get anything out of the real estate, which is precisely what Snyder claims the disclosure statement should have done.

Snyder also points to the fact that paragraph 12 speaks of the trustee selling assets in a plan of liquidation for the benefit of creditors. This, he claims, creates some kind of inference that there is something to distribute to the creditors. However, the

disclosure statement as a whole clearly tells creditors that there will not be much of anything for them. Paragraph 9 specifically states: "The Bank of Geneva believes Snyder has no equity in any tangible assets and he lacks the ability to satisfy creditors out of his prospective earnings." Thus, the language concerning the trustee selling assets to realize the equity in them is greatly conditioned. In fact, paragraph 12 simply provides that *if* the trustee thought there was some equity, he would be able to sell assets under the liquidation plan for the benefit of creditors. That is not a promise that equity will be available.

■ The court concludes that the disclosure statement, taken as a whole, does not hold out a promise of distributions under the proposed plan. It paints a bleak picture of Snyder's estate, and indicates (without stating so) that the Bank, with its liens on the real estate and machinery, may well be the only creditor to benefit from the plan. There is nothing misleading about the disclosure statement.

■ As for the pending litigation which Snyder refers to, it appears that the disclosure statement is not inadequate because of its treatment of the issues raised in the litigation. It is true that the statement does not reference the Bank's motion to have the entireties' property declared to be outside the estate. Instead, the statement states what was in effect the Bank's position in that motion when it states "This real estate is not a part of the bankruptcy estate as a matter of law." It is difficult to see how referencing to the motion would help drive home the point better. A reasonable creditor reading that statement would conclude that the real estate cannot be considered for purposes of paying off creditors, which is exactly what the bankruptcy court ultimately held. The information conveyed was adequate for purposes of assessing the merits of the plan.

The second litigation, the state court divorce proceedings, was referenced several times in the disclosure statement, and the effect that it would have on the entireties' property was set forth in paragraphs 2, 3 and 6. The statement is not inadequate for that reason.

■ The final litigation is a motion by the Bank to have the farming operation declared a partnership of Snyder, his wife and his son. Paragraph 7 makes reference as follows: "On both the entirety acreage and the Hammitt leasehold, the Bank of Geneva is claiming liens on the 1984 crops in the amount of $26,410.67 plus interest. The validity and extent of those liens is set for trial April 30, 1985." Again, the reference itself is somewhat vague. But the effect of any failure to notify creditors as to the partnership issue does not harm the creditors. As counsel for the Bank pointed out at oral argument, the effect of the ruling that the business was a partnership was a benefit for the creditors, as it widened the asset base available for recovering claims by including the assets of Snyder's wife and son. Snyder argues that this failure to inform would result in creditors possibly misclassifying themselves, because individual creditors of the debtor (Class IV creditors) would not realize that they would be joint creditors of both spouses (Class V creditors). But such a misclassification would tend to work *against* approval of the plan, as the statement makes clear that no one other than joint unsecured creditors will receive any distributions. The fact that creditors voted in favor of the plan despite the alleged misconception that they were in a worse class of creditors indicates that the failure to completely describe the partnership issue did not make the statement inadequate.

■ This brings the court to the final argument of Snyder: that the statement must have been confusing and inadequate because several creditors voted for it despite the fact that they stood to get nothing out of the liquidation.[1] Yet there is no

---

1. It is here that Snyder makes his only "legal" argument. He contends that the bankruptcy court found inconsistencies in the statement, but held that such inconsistencies illustrate the "pros" and "cons" of a disclosure statement.

This, Snyder contends, advocates a rule of law that the more confusing and misleading a disclosure statement is, the better it is. The court

proof of a causal connection here. Creditors may vote for approval for a variety of reasons. Here, they may have recognized that they stood to get nothing, and simply accepted that fact. The bankruptcy court gave all creditors sixty days to offer alternative proposals; none did. Snyder's objections were filed within a week of the filing of the disclosure statement, and a hearing was held on the statement itself. Yet to this day no creditor has objected or asked to have its approving vote withdrawn. The vote in light of the dismal prospects under the liquidation plan is much more likely to be a vote of resignation to the truth than a vote of confusion. Snyder has simply failed to establish any material inadequacy with the disclosure statement as to the issues of pending litigation.

### B. *Disparaging Comments*

Snyder's other complaint about the disclosure statement is that it contains disparaging comments about the way he ran the farming business. However, the examples offered in his brief are trivial. He complains that the statement accuses him of not listing all creditors, but admits that it is true. He points to disparaging references to his farming ability, which consist of a statement about "sporadic engagement in farming" and a reference about leasing dairy cattle. Quite simply, the court finds the references to Snyder to be inconsequentially disparaging at best. The question here is whether the disclosure statement provided adequate information to creditors. The comments which reflect on Snyder do not affect the adequacy of the information provided creditors.

In summary, the disclosure statement provided adequate information to the creditors, and the bankruptcy court did not abuse its discretion in approving the disclosure statement.

### CONCLUSION

For the reasons set forth above, the bankruptcy court's order approving the disclosure statement filed by the Bank of Geneva is hereby AFFIRMED.

---

disagrees with this reading of the bankruptcy court's order.

> The bankruptcy court stated the following: The Debtor has objected to the Bank's disclosure statement on the grounds that is is inconsistent and lacking in necessary facts without which creditors cannot make an informed decision. These internal inconsistencies should not necessarily bar the disclosure statement's approval ... Such inconsistencies simply illustrate to the readers of the disclosure statement why they should not vote for the plan as proposed. That is the function of a disclosure statement.

April 25 Order at 2. This is not, as Snyder contends, some rule that inconsistencies are good; rather, the court reads this as simply saying that the inconsistencies *identified by Snyder* are insufficient to bar approval. The bankruptcy court was keenly aware that the guiding principle is that the information provided must be adequate. Some inconsistencies are simply too inconsequential to affect the adequacy of the information provided. Snyder failed to identify any material inconsistencies that would affect the statement, and the bankruptcy court correctly found that the information in the Bank's statement was adequate. Snyder is simply reading too much into the bankruptcy court's language.