**In re Harold H. HIGGINS and Karen Y. Higgins, dba Higgins' Villager Restaurant, dba Higgins' A & W Restaurant, fdba Higgins' Pier 30 Restaurant and Lounge, Debtors.**

Bankruptcy No. 80–04114.

United States Bankruptcy Court, N.D. Iowa.

April 11, 1983.

Donavon D. Schaefer, Aurelia, Iowa, for debtors.

A. Frank Baron, trustee.

Edward F. Samore, Sioux City, Iowa, for trustee.

Findings of Fact, Conclusions of Law, and ORDER Allowing IRS § 507(a)(6) Claims, with Memorandum.

WILLIAM W. THINNES, Bankruptcy Judge.

The matters before the Court involve the bankruptcy trustee's recommendation for disallowance of Internal Revenue Service claims for withholding, FICA, FUTA, and investment credit recapture taxes. The matters were taken under advisement, and the Court, having been fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders.

## FINDINGS OF FACT

1. The debtors, Harold and Karen Higgins, filed a Chapter 7 bankruptcy petition on April 28, 1980.

2. After liquidation of the non-exempt assets, funds were available for distribution. The Court instructed creditors to file claims by February 3, 1981.

3. The Internal Revenue Service (herein the "IRS") did not file a claim by the designated date. On February 19, 1981, the debtors filed Claim No. 44 on behalf of the IRS. Claim No. 44 listed the following amounts due:

| | |
|---|---|
| Recapture of Investment Tax Credit (taken in 1977, 1978, 1979) | $ 9,427.42 |
| Federal Withholding Tax (First Quarter 1978) | 704.92 |
| Federal Withholding Tax (First and Second Quarters 1980) | 564.88 |
| Federal Social Security Tax on Wages (First and Second Quarters 1980) | 1,381.82 |

4. At the hearing on the trustee's final accounting, the trustee recommended disallowance of Claim No. 44 because it was not timely filed. The Court took Claim No. 44 under advisement at the hearing on Trustee's Final Accounting, and ordered the IRS to file a claim within thirty (30) days. The Court ordered payment of the court costs, the trustee's fees and expenses, and the trustee's attorney's fees and expenses at this hearing and delayed decision on all remaining claims pending decision on the IRS claim.

5. The IRS filed Claim No. 46 within thirty days as ordered by the Court. Claim No. 46 listed the following amounts due:

| | |
|---|---|
| Withholding and FICA (First Quarter 1980) | $ 726.42 |
| Withholding and FICA (Second Quarter 1980) | 320.28 |
| FUTA (1980) | 135.24 |
| Income (Additional tax 1980) | 9,427.42 |

The IRS claimed 11 U.S.C. § 507(a)(6) priority for these amounts.

6. The trustee objected to Claim No. 46 as untimely filed. After a hearing on the matter, the Court took Claim No. 46 under advisement.

7. Approximately one month later, the IRS filed Claim No. 47 to claim (i) that the income tax of $9,427.42 was an investment credit recapture tax, and (ii) that such tax was entitled to priority as an administrative expense pursuant to 11 U.S.C. § 507(a)(1).

8. The trustee objected to the amendment as untimely filed and argued that the investment credit recapture tax did not constitute an administrative expense.

9. The debtors and the trustee do not dispute the amounts due as claimed by the IRS.

10. The recapture of investment credit, taken in 1977, 1978, and 1979, was applied to certain restaurant equipment, which was abandoned by the Trustee.

## CONCLUSIONS OF LAW

1. A debtor may file a claim on behalf of a creditor within a reasonable time after the deadline for the filing of claims by creditors. 11 U.S.C. § 501(c).

2. An investment credit recapture tax is not an administrative expense under 11 U.S.C. § 507(a)(1), but is a tax entitled to priority under 11 U.S.C. § 507(a)(6).

## ORDERS

IT IS ORDERED that Claim No. 44 of Internal Revenue Service has been superseded by Claim No. 46, pursuant to Local Bankruptcy Rule No. 3004.

IT IS FURTHER ORDERED that Claim No. 46 of Internal Revenue Service be allowed as a tax claim with priority pursuant to 11 U.S.C. § 507(a)(6), as follows:

| | |
|---|---|
| Withholding and FICA (First Quarter 1980) | $ 726.42 |
| Withholding and FICA (Second Quarter 1980) | 320.28 |
| FUTA (1980) | 135.24 |
| Recapture of Investment Credit | 9,427.42 |
| TOTAL Amount Allowed | $10,609.36 |

IT IS FURTHER ORDERED that claim No. 47 of Internal Revenue Service is disallowed.

## MEMORANDUM

The debtors, Harold and Karen Higgins, filed a Chapter 7 bankruptcy petition on April 28, 1980. After the bankruptcy trustee liquidated the non-exempt assets, the Court notified creditors that funds would be available for distribution and that the creditors should file any claims by February 3, 1981. The Internal Revenue Service (herein the "IRS") did not file any proof of claim by the designated date. On February 19, 1981, the debtors filed Claim No. 44 on behalf of the IRS pursuant to 11 U.S.C. § 501(c) and Interim Bankruptcy Rule 3004. Claim No. 44 listed the following amounts due:

1. Claim No. 46 was substantially similar to Claim No. 44. Under Local Bankruptcy Rule 3004, Claim No. 46 supersedes Claim No. 44.

2. Federal Insurance Contribution Act, 26 U.S.C. § 3101 *et seq.*

3. Federal Unemployment Tax Act, 26 U.S.C. § 3301 *et seq.*

4. Such tax is computed when a taxpayer who has taken an investment tax credit in previous years disposes of an asset prior to the end of

| | |
|---|---|
| Recapture of Investment Tax Credit (Taken in 1977, 1978, 1979) | $ 9,427.42 |
| Federal Withholding Tax (First Quarter 1978) | 704.92 |
| Federal Withholding Tax (First and Second Quarters 1980) | 564.88 |
| Federal Social Security Tax on Wages (First and Second Quarters 1980) | 1,381.82 |

At the hearing on the trustee's final accounting, the trustee recommended that Claim No. 44 be disallowed as untimely filed. The Court took Claim No. 44 under advisement and ordered the IRS to file a proof of claim within thirty (30) days.

The IRS filed Claim No. 46 within the thirty-day time period given by the Court.[1] The IRS asserted 11 U.S.C. § 507(a)(6) priority for the following unsecured claims:

| | |
|---|---|
| Withholding and FICA[2] (First Quarter 1980) | $ 726.42 |
| Withholding and FICA (Second Quarter 1980) | 320.28 |
| FUTA[3] (1980) | 135.24 |
| Income (Additional Tax 1980) | 9,427.42 |

Thereafter, the trustee objected to Claim No. 46 as untimely filed. After a hearing on the matter, the Court took Claim No. 46 under advisement. The IRS then filed an amendment to Claim No. 46 which redesignated the income tax of $9,427.42 as an investment credit recapture tax[4] and asserted that such tax was entitled to priority as a § 507(a)(1) administrative expense. The trustee objected to the amendment as untimely filed and argued that such tax was not an administrative expense. Neither the trustee nor the debtors have disputed the amounts due as claimed by the IRS.

## DIVISION I

In a Chapter 7 bankruptcy proceeding, Section 726(a) controls distribution of estate the asset's useful life as posited in computing the original credit. The investment credit recapture tax is computed by subtracting the tax credit available based upon the actual useful life of the asset from the tax credit actually taken based upon the asset's hypothetical useful life. The investment credit recapture tax is added to the taxpayer's tax liability in the year the taxpayer disposes of the asset. *See* 26 U.S.C. §§ 38(a), 46(a)(2), 47(a); Treas.Reg. § 1.46–3.

assets. Such distribution is accomplished through a hierachy of allowed claims. The first set of allowed claims listed in § 726(a)(1) requires payment of § 507(a) priority claims in the order specified therein. Section 507(a), in turn, establishes a six-tiered hierachy of priority claims. Section 507(a) accords first priority to administrative expenses allowed under § 503(b), 11 U.S.C. § 507(a)(1), and sixth priority to government unsecured tax claims. 11 U.S.C. § 507(a)(6). To the extent of available assets in the estate, distribution is made on claims in each priority tier. Only if priority one claims are paid in full will any distribution be made on priority two claims and if a priority tier cannot be paid in full, distribution is made pro rata among creditors within such tier. 11 U.S.C. § 726(b). If the estate has enough assets to pay in full all § 507(a) priority claims, distribution will be made pro rata among the general unsecured creditors. 11 U.S.C. § 726(b).

In order to share in a distribution of estate assets, a creditor must file a proof of claim and such claim must be allowed. 11 U.S.C. § 502(a), (b). If a creditor does not file a proof of claim or such proof of claim is filed but disallowed, the creditor receives no distribution of the estate assets. *See* 11 U.S.C. §§ 726(a), 502(a), 507(a).

In the usual Chapter 7 case, an unsecured creditor's claim will be discharged to the extent that such claim remains unsatisfied after the distribution of estate assets. *See* 11 U.S.C. § 524. However, a government unsecured claim for taxes under § 507(a)(6) is not discharged. 11 U.S.C. § 523(a)(1)(A). The debtor remains liable after the bankruptcy proceeding for whatever amount of the tax claim that remains unsatisfied after distribution of estate assets.

The above-discussed concepts of distribution, allowance, and dischargeability lead to a direct tension between the interests of the debtors, the IRS, other priority claimants, and other unsecured creditors. If the IRS

claim is a § 507(a)(6) claim,[5] the debt is nondischargeable by these bankruptcy proceedings. 11 U.S.C. § 523(a)(1)(A). The IRS's failure to file a proof of claim or the disallowance of such filed claim would leave the debtors liable for the entire amount of such claim after the bankruptcy discharge. If an IRS Proof of Claim is filed and allowed and distribution is made on such claim, the debtors' post-bankruptcy liability to the IRS would be reduced by the amount of such distribution. Consequently, the debtors' interest would be furthered by allowing the IRS claim either as a first priority administrative expense, § 507(a)(1), or as a sixth priority tax claim, § 507(a)(6).

Given that the IRS's claim exceeds the amount of the estate assets, classification of such claim will have a great effect on the other creditors' claims. If the IRS claim is allowed as a first priority administrative expense, the remaining priority and unsecured creditors would receive no distribution. If the IRS claim is allowed as a sixth priority claim, other priority claimants would be paid in full, the IRS would receive a portion of the estate assets in partial satisfaction of its claim, and the remaining unsecured creditors would receive no distribution. If the IRS claim is disallowed, other priority claimants would still be paid in full, the IRS would receive no distribution, and the unsecured creditors with allowed claims would receive some pro rata portion of the estate assets.

█ Congress recognized the possibility that creditors with non-dischargeable debts might not file proofs of claim and thus subject the debtor to undiminished post-bankruptcy liabilities. H.R.Rep. 595, 95th Cong., 1st Sess. 352 (1977); S.Rep. 989, 95th Cong., 2nd Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. To guard against that possibility, Congress expressly allowed the debtor to file a proof of claim on behalf of a creditor if such creditor did

---

5. The Court in Division II of this opinion holds that the IRS claim is a § 507(a)(6) claim. If the Court had held a portion of such claim to be an administrative expense, that result would appear to render the portion of such claim so classified dischargeable because nondischargeability is hinged upon the claim having § 507(a)(6) status. *See* 11 U.S.C. § 523(a)(1)(A).

not timely file a proof of such claim. 11 U.S.C. § 501(c). Section 501(c), which allows a debtor to file a claim if the creditor does not timely file, necessarily means that the debtor may file a claim after the court-set deadline for the creditors' filing of claims, i.e., in this case, February 3, 1981.[6]

Neither § 501(c) nor the Bankruptcy Rules prescribe a date after which the debtor can no longer file claims. One court held that debtor-filed claims will not be timely unless filed within six months after the first date set for the meeting of creditors. In re Thompson, 12 B.R. 122 (Bkrtcy.D.Nev.1981). Such six-month time period was statutorily prescribed by the old Bankruptcy Act of 1898, 11 U.S.C. § 93. The courts held that such statutory six-month time period could not be altered. See e.g., In re Pigott, 684 F.2d 239 (3rd Cir.1982). Bankruptcy Rule 302 merely echoed that statutory time limit. Significantly, the Bankruptcy Reform Act of 1978 has no such statutory time limit and thus the old statutory six-month time limit should not be carried into the new code. In re Langley, 21 B.R. 772 (Bkrtcy.D.Me.1982).

■ In the absence of a statutory or rule-prescribed time limit, the courts should fashion a reasonable procedural time period in which debtors can file claims on behalf of creditors who do not timely file. See In re Circle Litho, Inc., 12 B.R. 752 (Bkrtcy.D.Conn.1981). Such a reasonable time period for the debtor to file claims on behalf of creditors does not prejudice other creditors or delay the administration of the estate. Accordingly, this Court concludes that debtors should be afforded a reasonable time to file a claim on behalf of a creditor after the creditors' deadline for filing claims has passed. In this case, the debtors filed Claim No. 44 within such a reasonable time. Consequently, the trustee's objection to the claim as untimely filed is denied.

■ Given that Claim No. 44 was timely filed, Claim No. 46 and the amendment thereto were also timely filed. Interim

Bankruptcy Rule 3004 expressly allows a creditor to file a claim after the debtor has done so on its behalf and provides that the creditor-filed claim supersedes the debtor-filed claim. Claim No. 44 put the remaining creditors on notice that the IRS had a claim. The IRS filed Claim No. 46 within the thirty-day time period as ordered by the Court. Claim No. 46 merely detailed the exact amount of the claim and such explication did not prejudice other creditors. Because the Court has concluded that Claim No. 44 was timely filed, the Court also concludes that Claim No. 46 was timely filed.

Finally, amendments to claims should be allowed unless the other parties would be unduly prejudiced. In re Futuronics Corp., 23 B.R. 281, 283 (D.C.N.Y.1982). No parties having shown undue prejudice, the Court concludes the amendment to Claim No. 46 was timely filed.

### DIVISION II

Because this Court has concluded that the IRS claim was timely filed, the remaining question is the priority of such claim. No party in interest objects to § 507(a)(6) priority for the withholding, FICA, and FUTA tax claims. Therefore, those claims are allowed with a § 507(a)(6) priority. 11 U.S.C. § 502(a); see 3 Collier on Bankruptcy ¶ 502.01(1) (15th ed. 1982).

■ The IRS claim for investment credit recapture tax was at first classified as a tax entitled to § 507(a)(6) priority. The IRS later filed another claim asserting such tax was entitled to § 507(a)(1) priority.

The filing of a debtor's bankruptcy petition commences a case which creates an estate that includes all of the debtor's interests in property as of that date. 11 U.S.C. §§ 301, 302, 541(a). The bankruptcy trustee represents and administers the estate. 11 U.S.C. § 323. Administrative expenses generally include expenses incurred by the trustee in administration and distribution of

---

**6.** Local Bankruptcy Rule 3004 allows a debtor to file claims on behalf of creditors after the first date set for the first meeting of creditors.

Such date precedes the court-set deadline for creditors to file claims.

estate assets. *See* 11 U.S.C. § 503. Administrative expenses can include "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(6)..." 11 U.S.C. § 503(b)(1)(B). Thus the statute prescribes two prerequisites for the allowance of a tax as an administrative expense:

i) the tax must not be specified in section 507(a)(6), *and*

ii) the tax must be incurred by the estate.

The investment credit recapture tax fails to meet either of these criteria for an administrative expense.

First, the investment credit recapture tax is a tax specified in § 507(a)(6). Section 507(a)(6)(A)(iii) allows government unsecured claims for income taxes "not assessed before, but assessable, ... after, the commencement of the case." The investment credit recapture tax is an income tax. The investment credit previously taken by the debtors directly reduces their previous income tax liability. The investment credit recapture tax is merely a revival of that income tax liability. Further, the investment credit recapture tax was assessable and, in fact, assessed after the commencement of the case. Therefore, the investment credit recapture tax falls within § 507(a)(6).[7]

Second, the investment credit recapture tax is not a tax "incurred" by the estate. The debtors' previous use of the investment credit directly reduced the debtors' income tax liability. Such credit did not benefit the estate. The investment credit recapture tax is a revival of the debtors' previous income tax liability. Such income tax liability did not arise because of the estate's *use* of any assets and thus the estate did not "incur" the tax. The "recapture" bears no relation to the estate's use or non-use of the property. Therefore, the investment credit recapture tax relates back to the debtors' pre-bankruptcy liability, not to the administration and distribution of the estate assets.[8] Because the estate received no benefit from the tax credit, it would be inequitable to require the estate to pay as an administrative expense the investment credit recapture tax.[9]

There is yet another reason for deciding that the investment credit recapture tax is not a tax incurred by the estate. Under the Bankruptcy Act of 1898, the IRS took the position that a debtor's liability for such a tax arose on the date the assets were transferred to the bankruptcy trustee[10] because such a transfer was a "disposition" of the asset for purposes of triggering the recapture provision. 26 U.S.C. § 47(a); Treas. Reg. § 1.47–2(a); *Mueller v. Commissioner,* 60 T.C. 36, 47 (1973); Rev.Rul. 74–26, 1974 C.B.–7. Under the Bankruptcy Reform Act of 1978, the debtor's assets are likewise "transferred" to the estate as of the commencement of the case, 11 U.S.C. § 546(a), but Section 3 of the Bankruptcy Tax Act of 1980, 26 U.S.C. § 1398(f), provides that the transfer of assets from the debtor to the estate is *not* a disposition for purposes of the Internal Revenue Code recapture provi-

7. Section 502(i) supports the result reached here. That section provides that tax claims that arise after the commencement of the case that are entitled to § 507(a)(6) priority shall be allowed or disallowed the same as if the claim had arisen *prior to the commencement of the case.* An example of such tax given by 3 *Collier on Bankruptcy* ¶ 502.09 (15th ed. 1982) is an employment tax on wages earned but not paid prior to bankruptcy. The liability for such tax arises when the wage claimants are paid which may be months after the bankruptcy filing. That tax liability, however, is deemed to be a pre-bankruptcy liability. Here, even though the tax was assessed after the commencement of the case, the tax liability relates back to the debtors' pre-petition income tax liability.

8. An analogous situation is when the debtor receives a tax refund after the commencement of the case. Such refunds are property of the estate, *i.e.,* pre-petition property, even though received after the commencement of the case. *In re Doan,* 672 F.2d 831 (11th Cir.1982).

9. *See also* 11 U.S.C. § 507(c) which directs that an erroneous credit shall be treated the same as the tax to which it relates.

10. *See* Bankruptcy Act of 1898 § 70, 11 U.S.C. § 110. The title to the debtor's non-exempt assets was transferred to the bankruptcy trustee as of the date the bankruptcy petition was filed.

sions. The Bankruptcy Tax Act took effect after the commencement of this case, however, and thus has no application to this case. *See,* Bankruptcy Tax Act of 1980, § 7(b).

It may well be that the provisions of the Bankruptcy Tax Act of 1980 will provide for a more equitable determination with respect to the recapture provisions than was available under former Bankruptcy law. The previous position of the IRS might certainly create anamolous results in a number of situations. Such a situation might involve a farmer who files a Chapter 11 petition and continues to run the farming operation as a debtor in possession; this farmer would continue to use property for which an investment credit was taken, would provide for its payment under the Chapter 11 Plan, and upon successful completion of the Plan, would have completed payments on the property. It would be ridiculous to claim in such a situation that the recapture provisions for the original tax investment credit had been triggered by a "disposition" of property which the debtor had continued to use in the farming operation, for which the debtor had paid pursuant to the Chapter 11 Plan, and which had never been transferred from the debtor's possession. Elimination of this "transfer" provision may result in the recapture question being decided on a case-by-case basis, depending on the type of case involved and the ultimate disposition of the property in the case, such as, by sale, by abandonment, or by retention of the property and payment therefor by the debtor.