## In re MIDDLE PLANTATION OF WILLIAMSBURG, INC., Debtor.

### Civ. A. No. 83–209–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

March 26, 1985.

W. Alan Maust, Hampton, Va., Robert A. Gordon, Goldstein, Rubenstein & Sher, Baltimore, Md., for appellants.

George M. Cheever, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for appellees.

## OPINION

DOUMAR, District Judge.

The issue on this appeal is whether the action of the Bankruptcy Court, in denying certain claims filed pursuant to a modified chapter 11 plan, should be affirmed. This appeal was taken by the debtor, Middle Plantation of Williamsburg, Inc. (Middle Plantation) and Hab Baker, III (Baker). Baker is President of Middle Plantation, its chief executive, operations and financial officer, and its principal stockholder. The modified chapter 11 plan was submitted by Long Hill Properties Joint Venture (Long Hill) in the reorganization proceedings commenced by Middle Plantation. Long Hill was formed by Leon H. Perlin, a minority shareholder and former director of Middle Plantation, and Realtec Incorporated, a real estate developer. Baker had caused three proof of claims to be filed after the claims bar date. In two decisions dated June 18, 1984, the Bankruptcy Court held that the

untimely proof of claims were without effect. This Court, for the reasons stated below, AFFIRMS the Bankruptcy Court with regard to two of the proofs but VACATES its decision with regard to the claim filed pursuant to 11 U.S.C. § 501(c) for further consideration consistent with this opinion.

The facts leading up to this appeal are rather complex. Other decisions of the Bankruptcy Court in this matter have been appealed to this Court.[1] In setting forth the facts of this case, the Court borrows extensively from a Memorandum Opinion issued by this Court on January 11, 1984.[2]

Middle Plantation was the owner of approximately 1,410 acres of land located in James City County, Virginia. The property was the principal asset of Middle Plantation and was to be subdivided and developed. Baker owned about seventy percent of the capital stock of Middle Plantation and Leon Perlin (Perlin) owned approximately twenty-five percent. Middle Plantation, as debtor, filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia on March 24, 1982. The debtor operated as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108 until June 17, 1983, at which time a trustee for the debtor was appointed pursuant to 11 U.S.C. § 1104.

Prior to the commencement of the chapter 11 proceedings, on or about December 17, 1981, Perlin entered into an agreement with Realtec, Inc. (Realtec), a South Carolina corporation, to establish the joint venture Long Hill. Realtec develops residential properties in North and South Carolina and specializes in the acquisition and rehabilitation of distressed properties. Long Hill was created for the purpose of acquiring the purchase money note which was secured by a first lien deed of trust issued by Middle Plantation in December, 1977. Long Hill anticipated acquiring the property by foreclosure under the first deed of trust. Once foreclosure was accomplished, Long Hill would then develop the land itself.

In December, 1981, Long Hill paid $400,-000 for the said purchase money deed of trust and note, which had a balance owing thereunder of approximately $1,200,000. Thereafter, Long Hill instituted foreclosure proceedings and Middle Plantation filed for relief under chapter 11. Middle Plantation also brought suit against various corporate entities and their individual owners, including Long Hill, Perlin and Realtec. Middle Plantation alleged, *inter alia,* that the defendants had, individually and in combination, perpetrated a fraud upon it by diverting a corporate opportunity (i.e., the discounted purchase of the note secured by the first deed of trust on the property) to themselves. This "adversary proceeding" was held before the Bankruptcy Court in accordance with Part VII of the Bankruptcy Rules. Because Perlin raised a defense involving the competency of Baker, evidence received in the adversary proceeding included an accounting of Baker's financial transactions with Middle Plantation.

Middle Plantation failed to file a plan for reorganization within the 120-day period allowed to it by 11 U.S.C. § 1121(b). Thereafter, on September 8, 1982, Long Hill filed a "Plan for Rehabilitation of the Middle Plantation Property" and a disclosure statement. In due course, Middle Plantation filed a competing plan. The Bankruptcy Court set June 17, 1983 as the last day for filing proofs of claim and July 15, 1983 as the last day upon which to amend either of the proposed plans. On October 5, 1983, the Bankruptcy Court confirmed the plan filed by Long Hill, as amended, and filed its findings of fact and conclusions of law.

Middle Plantation's creditor schedules and statement of affairs were filed on April

---

1. Various decisions of this Court have recently been affirmed by the United States Court of Appeals for the Fourth Circuit. See *In re Middle Plantation of Williamsburg, Inc.,* 755 F.2d 928 (4th Cir.1985).

2. *In re Middle Plantation of Williamsburg, Inc.,* 47 B.R. 884 (E.D.Va.1985) (Kellam, J.), *aff'd,* 755 F.2d 928 (4th Cir.1985).

19, 1982. With the exception of four claims, all unsecured creditor claims were listed as either disputed or unliquidated. These schedules were prepared under Baker's direction and were signed by him as the debtor's president. One of the listed claims was Baker's unsecured claim for $1,450,000. This claim contained the following notation: "Sums loaned to corporation over years of existence, subject to audit—unliq." Baker, however, failed to file a proof of claim for this amount on or before June 17, 1983, the claims bar date. Three proof of claims (Nos. 34, 35 and 36) were filed on June 17, 1983 on behalf of Baker, his wife and various affiliated companies in the aggregate amount of $107,-180.65. Proof of claim number 34 contained the following on its reverse side, *"this claim is in addition to that previously established by proofs in adversary proceeding 82–0063–NN."* (emphasis added)

The Bankruptcy Court held a hearing to consider the confirmation of the competing plans submitted by Long Hill and Middle Plantation on September 2, 1983. At the confirmation hearing, counsel for the debt-

or, Middle Plantation, reported to the Bankruptcy Court that the debtor's plan had failed to receive the requisite approval from creditors. Counsel for Long Hill then reported that its plan had received the requisite acceptances. The debtor objected that Baker's claim for $1,450,000 had not been included in the calculation of the amount of claims voting in consideration of Long Hill's plan. After oral argument, the Bankruptcy Court ruled from the bench that Baker's claim is disallowed for purposes of voting on Long Hill's plan because the claim was listed as unliquidated in the debtor's schedules and no timely proof of claim had been filed. The Bankruptcy Court then confirmed Long Hill's Plan and an order to that effect was entered on October 5, 1983. The Bankruptcy Court denied Baker's motion for reconsideration of the disallowance of his claim on October 28, 1983. The debtor appealed the confirmation order to this Court. Among the errors alleged was the disallowance of Baker's claim for purposes of voting on the plan. On January 11, 1984, this Court entered a Memorandum Opinion affirming the confirmation order.[3]

3. *Id.*
During oral argument Long Hill expressed the view that Judge Kellam's January 11, 1984 decision effectively decided the immediate issues before this Court. *See also* Long Hill's Brief filed October 1, 1984 at 9, 14. A careful reading of Judge Kellam's decision leads this Court to the opposite conclusion.
Among the issues dealt with in the January 11, 1984 opinion was whether "the bankruptcy court erred in not permitting Baker to vote his claim of some $1.4 million against confirmation." *In re Middle Plantation of Williamsburg, Inc.,* 47 B.R. 884, 893 (E.D.Va.1985). The Court was careful to point out that the only issue before it was whether Baker should have been permitted to vote his claim. *Id.* The Court noted that, it:
... is not here dealing with whether Baker should now be permitted to file his said claim. Under the Rule, not having filed his claim, he was not entitled to vote. Whether Baker should be permitted to now file a proper claim, or whether any claim is allowable, or the amount of such a claim is not decided on this appeal. That is an issue for another day. *Id.* at 25.
The votes were counted by the Bankruptcy Court on September 2, 1983. At that same hear-

ing the Bankruptcy Court confirmed Long Hill's plan. Tr. of Sept. 2, 1983 at 147. The Bankruptcy Court entered an order to that effect on October 5, 1983. Inasmuch as the issue before Judge Kellam was limited to voting and the voting occurred on September 2, 1983, it is obvious that Judge Kellam did not consider the validity of claims 38, 39 and 40 of which two were filed on September 21, 1983 and the last on October 14, 1983. It is these claims which form the basis of the immediate appeal.
Finally, to the extent that Judge Kellam expressed an opinion upon the validity of Baker's claim, it would appear to this Court that Judge Kellam believed that Baker had a valid claim. Support for this view may be gleaned from the following language contained in the opinion:
It seems this issue may be moot. The claim is one for whatever amount is ultimately found to be due, that will fall into a Class 7 claim. Under the Plan all such approved claims are to be paid in full on the date of the Plan. Since whatever amount is found to be due is to be paid in full, it is unimpaired under Section 1124(3)(A) and deemed to have accepted the Plan. Voting the claim against the Plan would therefore have been meaningless.
*Id.* at 24. Of course, such an opinion is dicta.

In the interim, on September 21, 1983, Baker filed two additional proofs of claim (Nos. 38 and 39), both in the amount of $1,557,000. Claim No. 38 purports to be a proof of claim amending claim Nos. 34, 35 and 36. Baker states at the end of the claim that:

This claim amends the following previously filed claims: Claim # 34, 35 and 36, filed with this Court on June 17, 1983, and amends the aggregate total to $1,557,000.00, incorporating the writings previously filed with said claims, and also, by reference, the evidence filed with this Court in January, 1983 in adversary proceeding 82–0063–NN styled *Middle Plantation of Williamsburg, Inc. v. Leon H. Perlin, et al* [755 F.2d 928], to include all testimony, accounting work, appraisals, charts and graphs.

In Claim No. 39, which requests interest in addition to $1,557,000, Baker states that:

This proof of claim incorporates the following by reference:

1. The three claims previously filed by Baker, Cheryl H. Baker, Baker Homes, Inc. and Anderson Lorde Realty, Inc.; and

2. The proofs and accounting evidence supplied by the firm of Hall, Cotman, Garrison and Roseberry, CPAs in the adversary proceeding 82–0063–NN, styled *Middle Plantation of Williamsburg, Inc. v. Leon H. Perlin, et al,* together with all charts, graphs, appraisals, and supporting data whatsoever entered as evidence in said adversary proceeding, which evidence was filed with this Court in January of 1983.

Finally, on October 14, 1983, a third untimely claim was filed as proof of claim number 40 in the amount of $1,557,000. This last proof of claim was filed on behalf of Baker by the debtor, Middle Plantation, through its counsel, pursuant to 11 U.S.C. § 501(c). This proof of claim explains as follows:

This proof of claim is based in part on the attached Summary of an accounting prepared by the accounting firm of Hall, Cotman, Garrison and Roseberry, CPAs.

Additionally, it includes the amount of claims previously filed by Mr. Baker, and incorporates additional evidence of debt to be presented to this Court at the appropriate time. This proof of claim is filed by the Debtor pursuant to Section 501(c) of Chapter 11 of the U.S. Bankruptcy Code, as it has been held by this Court that the claimant did not timely file.

On January 20, 1984, the Bankruptcy Court held a hearing to consider certain scheduled claims that were disputed by Long Hill. As previously stated, the creditor schedules were prepared by the debtor under the direction of Baker. Because the financial records were poorly kept, most of the debts were listed as disputed or unliquidated, requiring the creditors to file proofs of claim. Furthermore, Long Hill, the proponent of the accepted plan, did not have access to Middle Plantation's records. As a result of this hearing, the Bankruptcy Court issued an opinion, dated February 21, 1984, which held that Bankruptcy Rule 3003 was unconstitutional as applied to certain creditors. *In re Middle Plantation of Williamsburg, Inc.,* 36 B.R. 873 (Bankr.E. D.Va.1984). The Bankruptcy Court held that the notice scheme of the Bankruptcy Rules violated due process because it did not apprise creditors how the debtor's obligations were scheduled. *Id.* at 874. The effect of this ruling was to allow creditors who had responded in some fashion to the notice of objection sent by Long Hill, to share in the distribution even though they had failed to file proof of claims on or before the claims bar date. The Bankruptcy Court's ruling concerning the unconstitutionality of the Bankruptcy Rule is not before this Court. Accordingly, this Court neither adopts nor rejects the said ruling.

On May 4, 1984, the Bankruptcy Court held a hearing to consider the proof of claims filed by or on behalf of Baker and their effect upon the plan. The Bankruptcy Court considered proofs of claim numbers 34, 35, 36, 38, 39 and 40. The Bankruptcy Court ruled in two separate orders dated June 18, 1984 that Baker failed to

assert a valid claim for either $1,450,000 or $1,557,000. *In re Middle Plantation of Williamsburg, Inc.*, No. 82–00130–NN (Bankr.E.D.Va. June 18, 1984). Baker was, therefore, not treated as a creditor with respect to this amount for the purposes of distribution under Long Hill's Chapter 11 Plan. It is this decision, and this decision only, which forms the basis of this immediate appeal. Furthermore, it must be stressed that the issue before the Court is whether or not Baker had filed a valid claim. The exact amount of the claim is subject to future evidentiary proof.

The relevant statute, 11 U.S.C. § 1111(a)[4] provides that a proof of claim is deemed filed if the claim appears in the schedule of creditors and is not listed as disputed, contingent or unliquidated. The statute is supplemented by Bankruptcy Rule 3003(c)(2)[5] which provides that any creditor whose claim is not scheduled or scheduled as disputed, contingent or unliquidated must timely file a proof of claim in order to be treated as a creditor for the purposes of voting and distribution. The Rules further provide that the Bankruptcy Court shall fix the time within which to file proofs of claim. The creditor schedules,

prepared under the direction of Baker, as president of the debtor, listed Baker's loans to Middle Plantation in the amount of $1,450,000 as unliquidated debt. By so doing, Baker was therefore required to file a proof of claim in order for him to be treated as a creditor for the said amount. The Bankruptcy Court set June 17, 1983 as the claims bar date. Although Baker filed three proofs of claim, he failed to file a claim in the amount of $1,450,000. In proof number 34 dated June 17, 1983 in the amount of $73,954.62, Baker comments that *"[t]his claim is in addition to that previously established by proofs in adversary proceeding 82–0063–NN."* (Emphasis added). It is Baker's contention that the above language is sufficient to constitute a valid claim for an obligation in addition to $73,954.62. Thus, the Court is asked to decide whether the above language constitutes a valid claim for an obligation other than $73,954.62.

Bankruptcy Rule 3001(a) provides that a proof of claim is a written statement setting forth a creditor's claim. The rule requires that the proof of claim substantially conform to Official Form No. 19.[6] It is

4. 11 U.S.C. § 1111(a) states:
   A proof of claim or interest is deemed filed under section 501 of this title [11 USCS § 501] for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title [11 USCS § 521(1) or 1106(a)(2) ], except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

5. Bankruptcy Rule 3003(c) provides in part:
   (c) Filing Proof of Claim.
   (1) Who May File. Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.
   (2) Who Must File. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; and creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.
   (3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

(4) Effect of Filing Claim. A proof of claim or interest executed and filed in accordance with this subdivision shall supersede any scheduling of that claim or interest pursuant to § 521(1) of the Code.
The Bankruptcy Rules applicable during the course of this action were the Interim Bankruptcy Rules. The Interim Rules were superceded, effective August 1, 1983, by the Bankruptcy Rules. Interim Bankruptcy Rule 3001(b) governed the filing of proofs of claim. Rule 3003(c) essentially tracks the language of Interim Rule 3001(b). The Court will refer to the Bankruptcy Rules for the sake of convenience.

6. Bankruptcy Rule 3001(a) reads as follows: "Form and Content. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim for wages, salary, or commissions shall conform substantially to Official Form No. 20 or No. 21; any other proof of claim shall conform substantially to Official Form No. 19."
   Form 19 requires the creditor to state, *inter alia,* his name and mailing address, the amount of the debt and the consideration for the debt. The creditor must also sign and date the proof of claim.

essential that a proof of claim contain a demand against the debtor and manifest the creditor's intention to hold the debtor liable. *In re Sems Music Co.,* 24 B.R. 376, 380 (Bankr.M.D.Tenn.1982). Baker's proof of claim satisfies the requirements for the amount of $73,954.62. The notation to the effect that claim number 34 is in addition to that previously established by proofs in adversary proceedings, doe snot, standing alone, comply with the requirements of a valid proof of claim for an obligation other than $73,954.62. Indeed, the notation merely describes the nature of the $73,-954.62 claim. Baker clearly distinguished the $73,954.62 obligation from other potential obligations alluded to in the adversary proceeding.

It is Baker's position that any writing that is part of the Bankruptcy Court's records may establish a claim by the creditor against a debtor's estate. Therefore, Baker believes that the sentence referring to the adversary proceeding is sufficient to establish a valid claim. To support his position, Baker relies upon the case of *Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957). In *Fyne,* however, the Court of Appeals for the Fourth Circuit approved the late filing of an amended proof of claim. In reaching its decision, the Fourth Circuit relied upon the fact that there was substantial evidence in the Bankruptcy Court's files to establish the existence and amount of the claim. 245 F.2d 108–09. *Fyne* does not stand for the proposition that any writing may, in and of itself, establish a valid proof of claim. Following *Fyne,* under certain circumstances, a late proof of claim may amend a previous writing. *Id.* The Court finds that the sentence referring to the adversary proceeding, in and of itself, is not sufficient to establish a valid proof of claim. The sentence is merely descriptive of the immediate claim for $73,954.62. The sentence cannot be construed to be a manifestation of Baker's intention to hold the debtor liable for an additional obligation. The Court, however, will consider *Fyne* in its analysis of the legal effect to be afforded Claim

number 38 which purports to be an amended proof of claim.

As previously stated, Baker filed an amended proof of claim numbered 38 on September 21, 1983. Claim 38 was filed more than three months after the claims bar date. This claim is in the amount of $1,557,000 and is comprised of $107,000 established by proofs of claim 34, 35 and 36, and $1,450,000 listed on the creditor schedules. Claim 38 states that it amends claims 34, 35 and 36, incorporates the writings previously filed with the claims and evidence filed with the Bankruptcy Court in the adversary proceeding including testimony, accounting work, appraisals, charts and graphs.

■ Turning to the relevant law, it is clear that neither the listing of a claim in the debtor's schedules nor mere knowledge on the part of the trustee or of the Bankruptcy Court as to the existence of a claim is sufficient for allowing the filing of an amended claim. *Fyne,* 245 F.2d at 108. Bankruptcy Rule 10–401 which in part, forms the basis of 11 U.S.C. § 1111, requires strict adherence to the filing requirements. The Advisory Committee Notes to Rule 10–401 provides that: "[i]f a claim is required to be filed, failure to do so within the time fixed precludes that creditor from voting on a plan and participating in any distribution." A timely filed informal claim may, however, be later perfected by amendment even after the claims bar date. *Matter of Evanston Motor Co.,* 26 B.R. 998, 1000 (N.D.Ill.1983), *aff'd,* 735 F.2d 1029 (7th Cir.1984). The Court must therefore decide, what is a "claim" which, if timely made, may form the basis of a later amendment. As a minimum, a timely claim that may be later amended must be a writing which contains a demand against the debtor and manifest the creditor's intention to hold the debtor liable. *In re Sems Music Co.,* 24 B.R. 376, 380 (Bankr. M.D.Tenn.1982).

The informative case of *Fyne* and *Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957) illustrates the above body of law in opera-

tion.[7] In *Fyne*, the claimant obtained a judgment against the debtor before any bankruptcy proceedings were instituted. The claimant caused execution to be levied upon the debtor's property. Prior to forced sale of the property, other creditors of the debtor filed an involuntary petition against the debtor. The other creditors successfully alleged that the proposed sale would, effectively, render the debtor a bankrupt. The claim of the claimant was scheduled by the bankrupt debtor. The obligation to the claimant amounted to approximately one-half of the total obligations owed by the debtor. The claimant was represented by counsel at the first meeting of the creditors. The claimant did not, however, file a formal proof of claim because of its attorney's mistaken belief that the claimant's previous attorney made a formal filing. There were many communications between the claimant's attorney and the trustee including a writing to the effect that the claimant acknowledged that it was asserting its right as against the debtor. 245 F.2d at 108, 109. Thus, the *Fyne* Court stated: "[w]here there are enough facts appearing in the record to

establish claim against the bankrupt, it may, in a proper case, be used as a basis for amendment." *Fyne, supra,* 245 F.2d at 109, *quoting Cotton v. Bennett,* 59 F.2d 373, 375 (4th Cir.1932).

■ Applying the facts of this case to the relevant law, it would appear that Baker failed to make a sufficient timely claim against the debtor that could serve the basis for future amendment. Baker's reference to the adversary proceedings in claim 34 merely supplement and explain claim 34. It is clear that claim 34 is separate from other obligations that may have been referred to in the adversary proceedings. Claim 34, however, is a claim against the debtor for $73,954.62. The evidence offered by Baker in the adversary proceeding may, very well, have established that Baker had a claim against the debtor. However, the fact that Baker had a claim against the debtor and that the Bankruptcy Court knew about the existence of the obligation is not sufficient to establish a claim that may be amended. Baker must show that he desired to assert this claim against

---

**7.** The Bankruptcy Court was of the opinion that the Bankruptcy Rules enacted subsequent to the *Fyne* decision effectively overruled *Fyne*. See Transcript of Bankruptcy Court Proceeding of May 4, 1984 at 27–31, *In re Middle Plantation of Williamsburg, Inc.,* No. 82–00130–NN (Bankr.E. D.Va. June 18, 1984); *see In re Middle Plantation of Williamsburg, Inc.,* No. 82–00130–NN, slip op. at 6 (Bankr.E.D.Va. June 18, 1984). In reaching its decision, the Bankruptcy Court relied upon the Bankruptcy Rules Advisory Committee Notes and other Bankruptcy Court decisions.

The Bankruptcy Court traced the legislative history of 11 U.S.C. § 1111 to the Bankruptcy Rules. Specifically, the Bankruptcy Court quoted the advisory notes of Bankruptcy Rule 10–401, which was enacted in 1973, and provides that the failure to file a claim precludes a creditor from voting on a plan and participating in any distribution. The Bankruptcy Court listed the many judges, professors and practicing attorneys that participated in the creation of the Bankruptcy Rules. The lower court also detailed the process by which the rules are developed, sent to the United States Supreme Court and finally to Congress for enactment. To the extent that the *Fyne* decision deals with the construction of a statute or the application of a Bankruptcy Rule, this Court has no doubt that

subsequent statutes or rules enacted by Congress may overrule the dictates of the Fourth Circuit's *Fyne* decision. After reviewing the relevant legislative history, this Court cannot reach the same result as the Bankruptcy Court. To rely upon the advisory committee notes which merely states that failure to file a claim precludes participation in the distribution merely begs the question. The issue before the Court involves the determination of what constitutes a "claim". The Court, therefore, on the basis of the legislative history before it, finds that the Fourth Circuit's *Fyne* decision remains intact.

To further support its position, the Bankruptcy Court cites the cases of *In re Keyboards America, Inc.,* 30 B.R. 349 (Bankr.E.D.Va.1983) and *Matter of North American Acceptance Corp.,* 1 B.R. 438 (Bankr.N.D.Ga.1979). Both of these cases, however, merely distinguish its facts from the facts existing in *Fyne*. Needless to say, a court would not bother to distinguish the facts before it from a case that no longer stands for a valid proposition of law. The Court is of the opinion that the *Fyne* rule is still good law and because of the inconclusive legislative history of the applicable statutes, any modification of *Fyne* should come directly from the Court that decided *Fyne,* the United States Court of Appeals for the Fourth Circuit.

the debtor. Based upon the record presented to it, the Court cannot find evidence that Baker either made a demand against the debtor or if he manifested an intention to hold the debtor liable.

Support for the contention that Baker neither made any demand nor manifested any intention to hold Middle Plantation liable is the fact that the competing plan filed by the debtor, Middle Plantation, under Baker's direction, made no provision for treating the $1,450,000 claim as either debt or equity. The disclosure statement filed by the debtor in conjunction with its plan apparently specifically stated that the $1,450,000 claim was not dealt with under the plan. Furthermore, as previously stated, it is the Court's opinion that the obligation is upon Baker to demonstrate that he made a demand or manifested an intention to hold Middle Plantation liable. Baker has failed to make such a showing. The Court therefore holds that Baker failed to make a sufficient timely claim against Middle Plantation that could serve the basis for future amendment.[8]

Baker's next argument is that Claim number 39 is sufficient to establish his claim such that he should be allowed to participate in the plan's distribution. Claim 39, filed on September 21, 1983, incorporates by reference, evidence supplied in the adversary proceeding. Claim 39 was, however, filed more than three months after the claims bar date. Baker attempts to cure this defect by arguing that other creditors were able to file claims after the claims bar date because of a previous decision of the Bankruptcy Court and therefore, he too, should be afforded a similar opportunity.

In a decision dated February 21, 1984, the Bankruptcy Court found "Bankruptcy Rule 3003 unconstitutional, in part." *In re Middle Plantation of Williamsburg, Inc.,* 36 B.R. 873 (Bankr.E.D.Va.1984). Baker's reliance on this decision is, however, misplaced. The immediate issue before the Bankruptcy Court dealt with certain objections made by Long Hill, the proponents of the successful plan. As previously stated, the debtor, Middle Plantation, listed all debts as disputed. Therefore, creditors were required to file proofs of claim on or before June 17, 1983, the claims bar date. Apparently, some creditors failed to file timely proofs of claim. For some reason, unbeknowst to this Court, Long Hill filed objections to certain claims that were not timely substantiated by the filing of proofs of claim. Notice of the proponent's objections were sent to the creditors. Some creditors, after receiving notice of the objection, appeared at the scheduled hearing and presented evidence substantiating their claims. Other creditors did not appear but contacted Long Hill and submitted evidence substantiating their claims. Long Hill argued that the claims of these two groups of creditors must fail because the debts were listed as disputed and the creditors failed to file proof of claims by the claims bar date.

In rejecting Long Hill's argument, the Bankruptcy Court ruled that Bankruptcy Rule 3003 was violative of due process because it failed to require the debtor to disclose to the creditors whether their claims were listed as disputed, contingent or unliquidated. Such a listing would, of course, then require a creditor to file a proof of claim in order to substantiate its claim. The Bankruptcy Court stated that creditors have a right to assume that reasonable notice will be given to them before their claims are forever barred. 36 B.R. at 875 (citations omitted). The lower court concluded that failure to inform creditors how their claims were listed was not reasonable notice.

8. The Court notes that, although contained in the record on appeal, the exhibits introduced at the adversary proceeding as well as the transcript of that proceeding are not available to this Court. It appears that these records have been turned over to the United States Court of Appeals for the Fourth Circuit for their use in the consideration of certain related appeals. The Court is, however, of the opinion that the burden of coming forward with evidence of Baker's demand and intention to hold the debtor liable is upon Baker. The Court finds that Baker has failed to make any such showing.

The correctness of the Bankruptcy Court's decision regarding the constitutionality of Bankruptcy Rule 3003 is not before this Court. It is clear, however, that this decision does not apply to Baker. The Bankruptcy Court's decision focused upon the failure to disclose to creditors how their claim was filed. To be sure, Baker received the same formal notice as other creditors did regarding their claim. Unlike other creditors, however, Baker had actual knowledge that his claim was listed as unliquidated by virtue of the fact that the debtor's schedules were prepared under his direction. Indeed, acting as chief officer of Middle Plantation, Baker signed the debtor schedules prior to their submission to the Bankruptcy Court. The goal of the notice requirement of procedural due process is to provide notice reasonably calculated, under the circumstances, to provide an interested party with actual notice. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983).[9] In this instance, Baker had actual knowledge,[10] the very requisite of due process. Baker, therefore, should not be able to rely upon this Bankruptcy Court's ruling to justify his filing of a late proof of claim.

Baker's final claim, number 40, was filed on his behalf by the debtor pursuant to 11 U.S.C. § 501(c). The relevant portion of the statute provides: "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c). The Bankruptcy Court held that claim number 40 was filed after the claims bar date and therefore of no effect. *In re Middle Plantation of Williamsburg, Inc.*, 82–00130–NN, at 7 (Bankr.E.D.Va. June 18, 1984). Furthermore, Long Hill argues that

to allow the debtor to file a claim on behalf of its chief officer where the underlying claim is dischargeable in bankruptcy flaunts the purpose of 11 U.S.C. § 501(c). This Court will first address the issue of statutory interpretation and congressional intent.

Long Hill requests that the Court look beyond the statutory provision to the legislative history to fully understand what Congress intended the statute to mean and how it should be applied. The legislative history relied upon by Long Hill which serves to clarify the "congressional intent" is as follows:

> In liquidation and individual repayment plan cases, the trustee or the debtor may file a proof of claim under subsection (c) if the creditor doe snot timely file. The purpose of this subsection is *mainly* to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

S.Rep. No. 989, 95th Cong., 2d Sess. 61, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5847 and H.R.Rep. No. 595, 95th Cong., 1st Sess. 351, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6307 (emphasis added). Long Hill's position is that 501(c) was designed to afford meaningful relief to a debtor and therefore should only be operative in situations where the creditor's claim is nondischargeable. Furthermore, particularizing the facts at bar, Long Hill argues that Congress did not intend for the debtor to file on behalf of its majority shareholder and chief officer.

Long Hill opines that a court may resort to legislative history to modify or supple-

---

**9.** For an analysis of *Mullane* and its progeny, see Note, *The Constitutionality of Section 9–504(3) of the Uniform Commercial Code: A Question of State Action and Procedural Due Process,* 5 Cardozo L.Rev. 497, 521–26 (1984).

**10.** In the instant case, the Bankruptcy Court found that due process was lacking because the

creditors were not apprised as to how their claims were scheduled. The Court did not address the issue of whether due process requires creditors to be informed of the legal consequences of the category assigned to the obligations by the debtor.

ment a statute that appears to be clear and unambiguous on its face. Thus, it is Long Hill's position that the Court should limit the application of 501(c) to situations which involve nondischargeable debt. It does so without calling into question any ambiguity of the statute itself. Rather, Long Hill wishes this Court to graft the legislative comment onto the statute itself. Long Hill claims to find support for its position in two United States Supreme Court cases: *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) and *United States v. American Trucking Ass'ns*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). A close examination of these cases does not support Long Hill's contention.

*Train* dealt with the construction of the statutory term "pollutant" which, on its face, may encompass a broad range of materials. A federal statute, the Federal Water Pollution Control Act (FWPCA) made it unlawful to discharge "pollutants" without a permit from a particular administrative agency. The FWPCA went on to define "pollutants" to include "radioactive materials". Another federal statute, the Atomic Energy Act (AEA) regulated certain radioactive materials and delegated authority to another administrative agency which had issued regulations governing the discharge of such radioactive materials. Thus, there was a conflict as to which administrative agency possessed the authority to control the disposal of certain radioactive materials. This conflict arose because each agency apparently received a similar grant of power from two different federal statutes. Thus, it was necessary for the courts to determine which agency should regulate the disposal of the radioactive materials. In reversing the lower court which had refused to consult the relevant legislative history, the United States Supreme Court stated "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" 426 U.S. at 10, 96 S.Ct. at 1942, *quoting United States v. American Truck*

*Assns.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

As can be seen, Long Hill does not seek to clarify the meaning of any particular statutory language. Rather, Long Hill seeks to limit the application of the statute based upon a statement contained in the legislative history which, itself, raises numerous questions. Thus, applying the logic of Long Hill, 501(c) should be limited to situations only involving either a liquidation or an individual repayment plan.

The case of *United States v. American Trucking Assns.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) is similar to *Train*. The primary issue before the Supreme Court in *American Trucking* was the meaning of the word "employees" as used in Section 204(a) of the Motor Carrier Act of 1935. The term "employees" was not defined in the statute. 310 U.S. at 542, 60 S.Ct. at 1063. In ascertaining the meaning of "employees" the Court set forth certain rules on statutory construction. This Court believes that these rules are instructive to the issue at bar. The Court stated that the function of the court:

... is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute....

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one

"plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words.

310 U.S. 542–43, 60 S.Ct. at 1063–64 (footnotes omitted).

■ Applying these rules to the case at bar, leads this Court to the conclusion that 501(c) may be resorted to. To be sure the Court's goal is to effectuate the intent of Congress. After considering the statute and its legislative history this Court is of the opinion that this is one of those cases where the "words are sufficient in and of themselves to determine the purpose of the legislation." *Id.* The language of 501(c) is clear and unambiguous. It enables the debtor to file a proof of claim for a creditor who fails to do so. The statute does not provide for any exceptions nor is there any statutory language that could serve the basis for implying exceptions. The statement contained in the legislative history relied upon by Long Hill serves primarily as background information. The Court does not interpret this statement to manifest congressional intent to modify and limit the scope of the statute. Indeed, the very use of the word "mainly" suggests that the statute may be used in other circumstances. Had Congress desired the statute to be so limited, it very easily could have provided exceptions or expressly limit the use of 501(c). It, however, chose not to. In this sense, it can be said that the statute is the last word on this particular issue. *Accord United Air Lines, Inc. v. McMann*, 434 U.S. 192, 199, 98 S.Ct. 444, 448, 54 L.Ed.2d 402 (1977).

Support for this position may also be found in the Advisory Committee Notes to Bankruptcy Rule 3004. The rule was enacted subsequent to 501(c) and its language substantially tracks the statute. The Notes to the rule state that "the option accorded the debtor by the Code does not depend on the nondischargeability of the claim." Advisory Committee Note to Bankruptcy Rule 3004, Bankruptcy Rules (Collier Pamphlet Edition 1983). The Court therefore holds that, in the instant case, the statutory words are sufficient in and of themselves to determine the meaning and application of the statute. Furthermore, the Court cannot conclude that to permit a 501(c) filing in this matter would lead to an absurd, futile or unreasonable result.

Long Hill argues that even if 501(c) is applicable, the claim should be disallowed because it was untimely filed. The Bankruptcy Court held that claim number 40 had to be filed by the claims bar date and therefore it was untimely. *In re Middle Plantation of Williamsburg, Inc.*, 82–00130–NN at 7 (Bankr.E.D.Va. June 18, 1984). Neither Section 501(c) nor the Bankruptcy Rules specify a period for the filing of claims by a debtor on behalf of a creditor. To be sure, however, 501(c) contemplates that the debtor's filing be made after the claims bar date. If this were not the case there would be no purpose in the statute. Thus, courts should fashion a reasonable time period in which to enable debtors to file claims on behalf of creditors who do not timely file. *In re Higgins*, 29 B.R. 196, 200 (Bankr.N.D.Iowa 1983).

■ By holding that the 501(c) claim had to be filed on or before the claims bar date, the Bankruptcy Court did not have reason to address the issue of whether claim number 40 was filed within a reasonable time after the claims bar date. This Court, in the performance of an appellate function, is of the opinion that it is proper to remand the case to the Bankruptcy Court to enable it to consider this issue.

On remand, the Bankruptcy Court's reasonableness inquiring, as usual, requires the balancing of competing interests. The relevant time in which to consider the various competing interests is as of the date that the 501(c) claim was filed, October 14, 1983. The Bankruptcy Court should consider whether the October 14, 1983 filing would materially prejudice other creditors or materially delay the administration of the estate. *See In re Higgins*, 29 B.R. 196, 200 (Bankr.N.D.Iowa 1983). The Bankruptcy Court should also consider that although the claims bar date was June 17, 1983, Baker apparently first became aware

that his claim was in jeopardy at the September 2, 1983 confirmation hearing.

The Bankruptcy Court must also consider the fact that its decision of February 21, 1984 enabled other creditors, who had failed to submit timely claims, to participate in the plan's proceeds. At first blush, it would appear that this occurrence would be dispositive of the Bankruptcy Court's inquiry. Upon careful inspection, however, this may not be the case. This Court has very little information pertaining to the untimely claims that were permitted to participate in the plan. It may very well be that Baker's claim is for an amount much greater than the permitted untimely claims, such that allowance of Baker's claim would substantially prejudice many other creditors. The Court is of the opinion that the Bankruptcy Court, the original trier of fact, is best situated to make this determination initially. The Court must also point out that if claim number 40 is held to have been filed within a reasonable time, proceedings must be conducted to determine the amount of the claim.

Therefore, the decision of the Bankruptcy Court is VACATED. The matter is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.

IT IS SO ORDERED.