In re Mary Jane
ZIMMERMAN, Debtor.

Bankruptcy No. 86–02038.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 29, 1990.

James H. English, for debtor.

Benjamin Novak, for Susquebanc Lease
Co.

James R. Huff, II, Trustee.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy
Judge.

Before the court is the objection by the
Debtor to the Trustee's proposed distribution. The essential facts are undisputed.

Debtor, Mary Jane Zimmerman, individually, filed this voluntary bankruptcy petition under Chapter 7 on August 11, 1986; a
corporation filed a related Chapter 7 and
James R. Huff was appointed Trustee in
both cases. Under the Bankruptcy Rules
then in effect notice was provided to all
creditors, including the IRS, to file proofs
of claim on or before January 17, 1987.
Despite extensive activity between the IRS
and the Debtor, the IRS failed to file timely
proof of its 100% penalty tax claim against
the individual Debtor for trust fund taxes
originally assessed against the corporation.
Both the individual and corporate Schedules A–1 identified the tax claims. On or
about October 5, 1989, Trustee filed his
Final Account and Proposed Order of Distribution which would pay administrative
expenses and Debtor's exemption in full.
The only creditor to be paid would be Susquebanc Lease Company, the successor in
interest to General Funding Services, the
sole creditor to file a proof of claim. Susquebanc would receive a 16 percent dividend.

On March 7, 1990, more than three years
after the claims bar date and five months
after Trustee filed his proposed distribution, the Debtor invoked 11 U.S.C. § 501(c)
and filed a proof of claim on behalf of the
Internal Revenue Service in the amount of
$18,094.66. At the same time, Debtor filed
an objection to Trustee's proposed distribution, alleging that the Internal Revenue
Service should be paid pursuant to 11

U.S.C. § 507(a)(7) and § 726(a) before any distribution to Susquebanc. Debtor stands to benefit from payment to the IRS because the debt is non-dischargeable and Debtor's exemption could be reached by the IRS to the extent that it is not paid from the estate proceeds. The legislative history of § 501(c) established that Congress intended the provision "mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan. House Report No. 95–595, 95th Cong., 1st Sess. 351 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News [1978], pp. 5787, 5847." *In re D.A. Behrens Enterprises, Inc.*, 33 B.R. 751, 752 (Bankr.M.D.Pa.1983).

■ The issue before the court is whether the proof of claim filed by the Debtor on behalf of the Internal Revenue Service should be allowed, thereby requiring the Trustee's proposed distribution to be amended to pay the IRS. Section 501(c) is silent as to the time by which the noncreditor may file the proof of claim. Debtor contends that the 1986 version of Bankruptcy Rule 3004, in effect when this case was filed, should govern. Susquebanc contends that the version which took effect on August 1, 1987 should govern. The difference in the two rules is that the former did not provide a time limit by which a debtor or trustee could file a claim in the name of a creditor who failed to do so. The version now in effect limits Chapter 7 debtors and trustees to thirty (30) days after the expiration of the time for filing claims as prescribed in Rule 3002(c).

The United States Supreme Court stated, by Order of March 30, 1987, that the amended rule would take effect on August 1, 1987 and would govern all proceedings in bankruptcy cases thereafter commenced "and, insofar as just and practicable, all proceedings in bankruptcy cases then pending." In the instant case, both Debtor's bankruptcy petition and the original claims

bar date preceded the effective date of the 1987 version of Bankruptcy Rule 3004 and the case was still active after that date. The court sees no reason, on the facts of this case, why the current rule should not apply. It has been in effect since August 1, 1987, which is two and one-half years prior to the date on which Debtor filed the proof of claim, and would have allowed Debtor until September 2, 1987, to file the claim.

■ Even if the former rule were determined to be applicable, the Bankruptcy Court for the Middle District of Pennsylvania and the District Court for the Eastern District of Pennsylvania have held that a debtor utilizing that rule must file a proof of claim on behalf of a creditor within a reasonable time after the expiration of the claims bar date. *See, e.g., In re Gurst*, 80 B.R. 27 (E.D.Pa.1987); *In re D.A. Behrens Enterprises, Inc.*, 33 B.R. 751 (Bankr.M.D. Pa.1983). This court agrees that such claims should be filed within a reasonable period. In this case, a delay of more than three years from the bar date's expiration exceeds what is "reasonable". As were debtors in *In re Starkey*, 49 B.R. 984 (D.Colo.1984), this Debtor was well aware of the taxes owed to the IRS and, if acting with due diligence, would have filed a proof of claim much sooner than she did. In *In re Solari*, 62 B.R. 31 (9th Cir. BAP 1986), the court found that the action of a debtor who filed a claim on behalf of the IRS twenty (20) months after the bar date was "clearly unreasonable" and that debtor "slept too long before investigating and filing a proof of claim for non-dischargeable tax debts." *Id.* at 33.

According to Debtor's attorney during the hearing on this matter, Debtor was in active negotiations with the Internal Revenue Service. Debtor, like the Trustee and creditors, is required to investigate and take appropriate steps to protect her interests. One of these steps includes monitoring the claims docket. Debtor failed to do so, even though the matter is of paramount significance to her in light of its effect on her exemption. Although Debtor will be adversely affected by disallowance of the

claim, Susquebanc will be adversely affected if it is allowed. Susquebanc properly and timely filed a proof of claim which has been allowed by the court. To sustain the Debtor's objection to Trustee's proposed distribution would prejudice Susquebanc by diverting funds earmarked for it to the IRS, which did not file a claim. If the court were to sustain the objection and allow the claim, Susquebanc would receive nothing. As is, it would receive $19,112.80 against a claim of $116,894.02. In balancing the equities, the court finds it appropriate to give more weight to the position of Susquebanc, which was in compliance with the Bankruptcy Code and acted timely to protect its interests, rather than to that of the Debtor, who did not.

The Bankruptcy Code is designed to adjust two counterbalancing rights—that of the debtor to a fresh start, and that of the creditors to obtain payment. Here, if the filing of the proof of claim is allowed, Debtor will receive $4,150.00 by way of an exemption which may be reachable by the IRS post-bankruptcy. Congress enabled debtors to guard against the possibility that a creditor with a nondischargeable debt would fail to file its claim and thus proceed against exempt assets by enacting § 501(c). *See In re Higgins,* 29 B.R. 196 (Bankr.N.D.Iowa 1983). The only limitation is that the action be taken in a timely manner, which this Debtor has not done under the standard established by either the current or former version of Rule 3004.

For this reason the objection will be overruled and an appropriate order will be entered.